JONES, Justice.
This appeal is from a judgment of the Circuit Court of Jones County refusing to set aside a final judgment of forfeiture on a bail bond signed by the appellant as surety. We affirm.
Roy Strickland was indicted by the Circuit Court of Jones County, Mississippi, on a felony charge. In order that he might be released from prison, Deavours Nix and two other parties signed with Strickland a bail bond in the amount of $2,500. On April 20, 1967, during the March term of that court, the case was called and default made. Judgment nisi was entered directing the issuance of scire facias returnable to the next term of court, the third Monday of May 1967. At the May term, none of the sureties appeared and judgment nisi was made final.
On June 12, 1967, two of the sureties, other than Deavours Nix, appeared and satisfied the court that process had not been served upon them; therefore, the final judgment as to them was set aside. On May 20, answer was filed by the principal Strickland and Deavours Nix, and on June 9, 1967, a separate motion was filed by Deavours Nix to set aside the final judgment entered against him.
It was stipulated that on April 20, 1967, application for continuance was made by the principal and overruled, and that in event of appeal, the entire testimony on the motion for continuance should be made a part of the record. It was also stipulated that on April 20, 1967, the principal, after examination by one Dr. Bass, was brought into court at 1:30 p. m. by the deputy sheriff in response to an order of the court. It was further stipulated that he was tried on April 21, 1967, and acquitted on April 22, 1967.
Turning now to the record on the application for continuance, we find that when the principal’s case was set for trial on April 20, his attorneys appeared and made a motion for continuance to the following week, alleging that principal was not in physical condition to stand trial on that day.
Dr. E. E. Ellis was called as the first witness. He testified that Strickland was admitted to the community hospital on the night of April 19. A nurse reported to him that he had been in an automobile accident. The principal was in quite a bit of pain, but nothing appeared broken. He was given medicine to relieve pain and was put to bed until morning (the 20th), when he could be X-rayed. There was no fracture, but the doctor said the principal was stiff and extremely sore and was not able to get out of bed when he left. Dr. Ellis did not think the principal was faking. He thought it would be extremely cruel to force the principal to attend trial and believed he could stand trial better in a few days.
The principal rested and the State introduced Mr. Walter Cade, a policeman. He testified that he saw the automobile in *556 which the defendant claimed to have had his accident. He saw it that morning; he found no blood or any evidence of a person’s being injured inside the car, and there was no physical damage to the driver’s side of the car. Pictures of the car, made by the deputy sheriff, were introduced. The only damage was to the right front headlight area. Mr. Cade was asked about the investigating officer’s report and said that the report noted no physical injuries but that the driver complained of pain.
The next witness was Mr. Lavon Williams, also a policeman. He had examined the car at the scene of the accident prior to its having been moved. He ascertained that the driver was Roy Strickland, and that the car belonged to one Travis Buckley, a lawyer. He said he and his partner on a routine patrol passed the car and stopped at the post office at approximately 12:40 a. m. About thirty seconds later, they received a call over their radio to investigate a wreck. It was the car they had already passed. Williams said that they did not recognize it as a wreck when they passed it, it appearing that the vehicle had just been pulled up very close to a truck. They were not aware that there had been a collision.
Upon investigating, Williams and his partner found the principal lying on the floorboard, his head hanging out of the car opposite the driver’s side. Williams asked him if he were injured in any way. The principal complained of back injuries, but there were no visible signs of injury.
At the scene when Mr. Williams and his companion arrived were a truck driver, a colored employee of the postal department, and a white employee of the postal department. The truck driver worked for Smith Bakery Company, owner of the truck involved. The next person to arrive was Mr. Travis Buckley, about one minute after the witness arrived, and in addition to Mr. Buckley, one Jesse White and Mr. Deavours Nix, appellant, came. Nix arrived just a few minutes after Buckley arrived. Mr. White and Mr. Nix came together.
Williams called for the police ambulance and a wrecker. He was at the scene about thirty or thirty-five minutes. Mr. Jesse White, who came with Mr. Nix, made some pictures, but not at the request of the police. The car, Williams says, was lightly damaged. The car and truck were still touching, not having rebounded. The principal was taken to the hospital by the ambulance.
On cross-examination Williams said Strickland was drinking and that they had charged him with DWI. Williams, smelling liquor, was of the opinion the principal was driving under the influence of liquor and, at the hospital, Strickland admitted that he had been drinking.
While Williams said that they charged Strickland with DWI, he never testified that Strickland was arrested. He never said when the charge was made, or what disposition, if any, was ever made of it. In fact, it is not shown that he was arrested on the charge at any time. On redirect, Williams said that he did not call Jesse White, Deavours Nix, or Travis Buckley.
Dr. James C. Bass was introduced as the next witness. He had been appointed by the court to examine the principal. He testified he saw the principal at the hospital that morning sometime after eleven o’clock. The principal gave a history of having been involved in an automobile accident and was complaining of pain in his back and right leg. Dr. Bass could detect no neurological deficit. The principal had no abnormal X-rays and demonstrated no muscular spasms as he turned in bed. The doctor was of the opinion that the principal’s appearing in court would not affect him physically.
Willie C. Gavin, a post office employee, was called. He was carrying mail from the post office to the railroad station. He saw the automobile driven by Strickland strike the same truck twice. He estimated *557 the speed of the automobile the first time it struck the truck at five, six, or seven miles per hour. He said something to the driver and the driver backed off and went around the block. When Gavin was making another trip a few minutes later, the same car struck the same truck again at about fifteen or twenty miles per hour. He said it looked like the driver fell over on the seat and rolled off onto the floor.
The State rested, and the principal called in rebuttal Dewey Lee, the policeman who was with Williams. There was no material difference between this witness’s evidence and that of Patrolman Williams, except that this witness did introduce the police report showing the accident. Neither the principal nor the surety testified in these proceedings.
On this evidence, the court held:
Under the evidence that has been adduced on the motion for continuance, the court finds that the defendant in this case by his own misconduct has attempted to delay the trial.
After hearing the testimony heretofore stated in brief, the court, in addition to the finding as to default, further said:
The Court further finds on the basis of the evidence before the Court in the motion for a continuance that Roy Strickland wilfully and contumaciously attempted to avoid going to trial on the day that his trial was set and that the grounds for setting aside the judgment as to the said Roy Strickland and Dea-vours Nix are wholly without merit.
Therefore, the motion to set aside the final judgment was overruled.
This presents an interesting but not difficult question that, so far as we can find, has not been submitted previously to this Court. The law seems settled.
In Stewart v. State, 150 Miss. 545, 117 So. 533, (1928), this Court announced :
The release of sureties on a bail bond from liability thereon is not within the discretion of the courts; they being authorized to grant such relief only when a legal right thereto has been made to appear.
Even in states where the court may exercise discretion in remitting the bail penalty, the remission is permitted only in those cases where there was no wilfullness on the part of the principal in defaulting. See 8 Am.Jur.2d Bail and Recognizance § 169 (1963). Even if the courts in this state had discretion, we think in a case such as this where the proof supported a finding by the court that the principal had undertaken to commit a fraud upon the court, the remission of such penalty would itself be an abuse of discretion. To permit such conduct would impede the proper administration of justice in criminal matters and take control of the docket away from the court and, in effect, vest it in the defendants themselves.
Our Mississippi Code 1942 Annotated section 2491 (1956) provides for forfeiture of bail and the issuance of scire facias thereon. It further provides that after the return of service:
* * * [Jjudgment may be made absolute thereon, unless a sufficient showing to the contrary be made to the court at the time the case is called in its order on the docket.
The scire facias is to command the sureties to appear at a day fixed and “to show cause, if any they can, why the said judgment nisi should not be made final.” Of course, the cause provided for should be a valid cause, and under no circumstances should it be a fake, sham, or fraud undertaken to be perpetrated upon the court.
Section 2493 of the Mississippi Code 1942 Annotated (1956) provides that the sureties may surrender the principal at any time before final judgment in discharge of *558 their liability. However, this statute itself provides:
* * * [B]ut if this be done after forfeiture of the bond or recognizance, the breach of the bond or recognizance must be satisfactorily excused before the court * * *
The agreement of the principal on bail bond is identical with that of surety, and what will not avail the principal cannot avail the surety. The sureties are so far bound with the principal that they must show that he had a sufficient excuse for not keeping the condition of the bond and that there was no design to evade justice. Phillips v. State, 185 So.2d 157 (Miss.1966); 8 Am.Jur.2d Bail and Recognizance § 170 (1963).
In each of three cases decided in the last few years, we have recognized the liability or nonliability of the surety depended on the acts of the principal. Phillips v. State, supra; Warren v. State, 179 So.2d 181 (Miss.1965); Corn v. State, 250 Miss. 725, 168 So.2d 304 (1964).
In Corn v. State, supra, it was held:
According to the overwhelming weight of authority in other jurisdictions, both state and Federal, the surety on an appeal bond is not entitled to be relieved of its obligation on such bond unless it can show that the performance of its undertaking has been rendered impossible or excusable (a) by an Act of God; (b) by an act of the obligee; or (c) by an act of law. State v. Pelley (1943), 222 N.C. 684, 24 S.E.2d 635.
The incarceration of the principal in a different jurisdiction for a second and different offense against the laws of that jurisdiction, even where the principal is prevented from appearing to answer his bail by such incarceration, does not exonerate the surety. This view is fortified by the great weight of authority, both in state and federal courts. Weber v. United States (1929), 10 Cir., 32 F.2d 110; and cases cited.
The facts pleaded by the surety in this case show that its principal, the appellant Corn, was prevented from appearing not by an Act of God, not by an act of the obligee, not by an act of law, properly viewed, but by reason of his own voluntary act, which rendered him amenable to the criminal laws of another jurisdiction.
Corn’s own conduct prevented the fulfillment of his obligation to surrender himself to the Sheriff of Hancock County, and for his default the surety obligated itself to pay the penalty in the bond. * * * Id. 168 So.2d at 306.
In Warren v. State, 179 So.2d 181 (Miss.1965), the principal had executed bond in the amount of $6,500, $6,000 for his appearance before the Supreme Court on appeal, and $500 for the cost of the appeal. Motion to discharge liability on the appearance bond was made for the reason that after the appeal bond to this Court and on November 30, 1964, the State, by its acting governor, granted extradition of the principal Warren to the State of Arkansas. In pursuance to said extradition, Warren was delivered to the State of Arkansas to answer criminal charges against him there. It was held by this Court that when the State accepted the appearance bond it amounted to a contract between the State and the surety, under which the surety agreed to have the appellant Warren present when required. The State was the obligee and a party to the bond. The State delivered the appellee into the custody of the bondsman, and the bondsman covenanted to have him present when so required. Since it was a party to the contract, the State was under obligation to do nothing which would prevent performance of the contract by the bondsman. The State, having the defendant in custody, being held at that time by the sheriff of Harrison County, sent him against his will from this jurisdiction and thereby ren *559 dered it impossible for the sureties to perform their covenant.
Under this set of facts, we held that the State, itself having breached the obligation that it owed to the surety, had thereby released the surety from any liability on the bond and that they were entitled to have their liability discharged. In the instant case, the principal wilfully violated his agreement, and neither he nor his surety should be permitted to claim a release from the contract.
In Phillips v. State, 185 So.2d 157 (Miss.1966), where the principal voluntarily agreed to return to another state and voluntarily signed a waiver of extradition, it was held by this Court that this act of the principal was a wilful and voluntary act on his part and that the surety was not entitled to be relieved of liability.
From these decisions, it will be seen that the liability of the surety is dependent upon the acts of the principal as well as himself. Of course, the surety has the power to arrest the principal, carry him in, and surrender him, or to call upon the officers to arrest him.
As stated in the three decisions hereinbefore mentioned, and particularly Corn v. State, supra, it was held that the surety on a bail bond is not entitled to be relieved of his obligation unless he can show that the performance of its undertaking has been rendered impossible or excusable (1) by an act of God; (2) by an act of the obligee; or (3) by an act of law. These are the legal rights referred to in Stewart v. State, supra.
As a corollary to this rule, it must be (a) that there was no design or wilfulness to evade justice by those seeking relief and (b) there was no prejudice to the State resulting from the default. See 8 Am.Jur.2d Bail and Recognizance §§ 178, 171, 177 (1963).
The burden is on the applicant to show such elements as lack of wilfulness on the part of the defendant or that the State has lost nothing by the failure of the sureties to produce their principal. See 8 Am.Jur.2d Bail and Recognizance § 165 (1963).
That the principal after default pled guilty and was sentenced does not require vacation of forfeiture. 8 Am.Jur.2d Bail and Recognizance § 171 (1963). The fact that the principal is innocent has been held to constitute no defense. 8 C.J.S. Bail § 97 n. 26 (1962).
The guilt or innocence, conviction or acquittal, of the person criminally charged is not the basis of forfeiture. The breach of the bond takes place when the defendant fails to report in court as required and the court enters that fact of record. State v. Wynne, 238 Mo.App. 436, 181 S.W.2d 781 (1944).
Appellant argues the defendant was in the custody of the City under a DWI charge, but the evidence does not support this claim, if it should be a defense.
If no penalty were imposed on the failure, in the absence of a legal excuse, of the principal to voluntarily appear or of the surety to surrender his principal, the acceptance of an appearance bond would be not only a vain and futile act but a farce.
This case unquestionably should be affirmed to preserve to the trial courts the right to control their docket and to prevent fraud being perpetrated by the principal or a surety, or either, upon the courts.
Affirmed.
GILLESPIE, P. J., and RODGERS, IN-ZER, and ROBERTSON, JJ., concur.