VIC HANSEN & SONS, INC., Appellant, v. CROWLEY and another, Respondents.

*No. 6. Argued January 4, 1973.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 728.)

For the appellant there was a brief by *Grutzner & Jaeckle, S. C.*, and *Edward E. Grutzner*, all of Beloit, and oral argument by *Edward E. Grutzner*.

For the respondents there was a brief by *Bidwell & Jones* of Janesville and oral argument by *Nicholas P. Jones*.

CONNOR T. HANSEN, J. August 15, 1970, defendants purchased from the plaintiff a used 1965 Oldsmobile automobile. The original contract called for the payment of a total time price of $2,253.52, comprised of the cash price of $1595, subject to a down-payment credit of $18.51, plus additions for sales tax and credit health and accident insurance of $157.22, and a time-price differential of $519.81. The annual percentage rate on the contract was 26.58.

Immediately following the sale the vehicle developed mechanical problems and defendants had to return the vehicle several times for repairs. August 24, 1970, after meeting but one partial installment, the defendants re-

fused to make additional payments and surrendered the vehicle to the plaintiff. September 16, 1970, defendants returned the properly executed title to the vehicle to plaintiff, whereupon the plaintiff had the title to the vehicle re-entered into its name. After making a demand for payment and receiving none, plaintiff sent notice to the defendants on October 1, or October 2, 1970, that after October 15, 1970, the vehicle would be sold at a private sale. The vehicle was "purchased" at the private sale by the plaintiff. The "sale" took place by means of an inter-office exchange of papers, wherein defendants were credited with $700 upon plaintiff's ledger. Defendants' account was further credited with the principal payment of $90 and rebates for prepaid insurance and prepaid interest of $523.89; leaving a net balance of $939.63, upon which the plaintiff brought suit in county court to reduce to judgment.[1]

The action was tried before the court. Following trial, the trial court determined that the "sale" of the vehicle on October 15, 1970, was not in accordance with the law, and that the plaintiff had failed to establish the amount to which it was entitled to a deficiency judgment. Judgment was accordingly entered October 29, 1971, dismissing plaintiff's complaint.

The dispositive issue raised on this appeal is whether, under the Uniform Commercial Code (UCC) as adopted in Wisconsin, defendants are liable to plaintiff for any deficiency arising out of their default on their contract for the sale of the automobile. The controversy centers

---

[1] Following trial, the trial court determined and the plaintiff, through his attorney, conceded that the contract was usurious in that the annual percentage rate of 26.58 percent was in excess of that allowed by law, pursuant to sec. 218.01, Stats. Sec. 218.01 (6) (d), therefore, barred recovery of any and all time-price differential, which necessitated a further adjustment in the deficiency as claimed by the plaintiff. The adjustment reduced the claim of the plaintiff to $858.19.

around plaintiff's "sale" of the automobile following defendants' default and the subsequent repossession of the car by plaintiff.

Sec. 409.504, Stats., in part, provides:

". . . (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . ..

"(2) . . .

"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

The record indicates that the plaintiff "sold" the automobile to itself through an inter-office exchange of papers. There is no evidence of any bids sought or given, or any attempt to ascertain the value of the automobile other than from those within plaintiff's business organization. It is undisputed that it was a private sale. Much of counsel's arguments and discussion are concerned with

the commercial reasonableness of this "sale" and the price obtained. The question of whether the plaintiff could purchase the automobile at his own private sale, regardless of whether or not the sale was conducted in a commercially reasonable manner, is not presented on this appeal.

The trial court held that the sale of the automobile was not "commercially reasonable" as required by sec. 409.504 (3), Stats., in that while the defendants were indebted as to the "retail value" of the automobile, plaintiff unilaterally assigned a "wholesale value" upon sale. It was the opinion of the trial court that the application of different standards of valuation results in a sale that is not "commercially reasonable," and that the plaintiff failed to submit sufficient evidence to establish the amount of the deficiency, if any, to which it was entitled.

Sec. 409.504 (3), Stats., requires that ". . . every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Sec. 401.203 provides further that: "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement."

Prior to the enactment of the Uniform Commercial Code in Wisconsin, this court held that the secured party owed a duty to the debtor to use all fair and reasonable means in obtaining the best price for the property on sale. *Schwemer v. Citizen's Loan & Investment Co.* (1937), 225 Wis. 46, 52, 272 N. W. 673; *Kellogg v. Malick* (1905), 125 Wis. 239, 252, 253, 103 N. W. 1116. This duty was not abandoned upon the enactment of the code. The purpose of the Uniform Commercial Code is the protection of both the creditor and the debtor. Each party to the transaction has certain duties. The duty of the secured party in this instance was to obtain the best possible price it could obtain for the collateral for the

benefit of the debtor.[2] The secured party does not have to use "extraordinary means" to accomplish this result. Ordinarily, proof that the price obtained was the fair market value thereof would be sufficient.

Although defendants pled as an affirmative defense the allegation that the "sale" and price obtained were not commercially reasonable, there is some conflict as to who has the burden of proof thereto.

One line of authority holds that the secured party must establish that every aspect of the sale was commercially reasonable. *First Nat. Bank of Bellevue v. Rose* (1972), 188 Neb. 362, 10 UCC Rep. 903, 905; *In re Bro Cliff, Inc.* (D. C. Mich. 1971), 8 UCC Rep. 1144, 1149; *Universal C. I. T. Credit Co. v. Rone* (1970), 248 Ark. 665, 7 UCC Rep. 847.[3]

Other authorities have held that a secured party makes out a case for a deficiency judgment by proving the debt and security agreement and that a credit of a stated amount has been allowed as the result of the sale of the collateral, and that the burden shifts to the debtor to show why the creditor should not recover the deficiency. *Fryer & Willis Drilling Co. v. Oilwell, Division of United States Steel Corp.* (Tex. Civ. App. 1971), 472

[2] *A to Z Rental, Inc. v. Wilson* (10th Cir. 1969), 413 Fed. 2d 899, 909; *Morris Plan. Co. of Bettendorf v. Johnson* (Ill. App. 1971), 271 N. E. 2d 404, 9 UCC Rep. 728, 732; *Cities Service Oil Co. v. Ferris* (D. C. Mich. 1971), 9 UCC Rep. 899, 902; 2 Gilmore, *Security Interest in Personal Property*, p. 1234, sec. 44.5, ". . . The obligation on the secured party is to use his best efforts to see that the highest possible price is received for the collateral."

[3] "In an action to recover a deficiency judgment in which the sale of collateral is attacked for want of notice, the burden of showing the giving of any notice required should properly devolve upon the secured party, not solely because it is the plaintiff in the action, but because the proof with respect thereto is peculiarly within its knowledge. . . ." *Universal C. I. T. Credit Co. v. Rone, supra*, page 669. *See also: Mallicoat v. Volunteer Finance & Loan Corp.* (1966), 57 Tenn. App. 106, 415 S. W. 2d 347, 3 UCC Rep. 1035, 1039.

S. W. 2d 857, 9 UCC Rep. 1135; *Ekman v. Mountain Motors, Inc.* (Wyo. 1961), 364 Pac. 2d 998, 1001.

It is our opinion that those jurisdictions which hold that the secured party must establish that every aspect of the sale was commercially reasonable enunciate a rule that more appropriately recognizes the tenor of the code. This will henceforth be the rule in this state in those instances where the property is sold at "private sale." [4] The secured party has the duty under the code to proceed in good faith and in a commercially reasonable manner. It follows that he who has the duty should also have the burden of proof.

Upon trial it was necessary for the plaintiff to establish that every aspect of the sale was commercially reasonable, including the adequacy of the price for which the collateral was sold.

The evidence submitted on the sufficiency of the sale is scant. When the vehicle was first traded to the plaintiff, prior to sale to the defendants, it was appraised at $800 and, with minor repairs amounting to $107.70, was thereafter resold to the defendants for a cash value of $1595. Approximately sixty days later, after its return, the car was sold back into inventory at an appraised "wholesale" value of $700. The original appraisal of $800 was also designated as "wholesale." Plaintiff's witnesses testified that the $700 was a "fair value," and close to what other dealers would have paid for it. The record is barren on the subject of the retail value of the car on October 15, 1970, the time of the private sale to the plaintiff. The vehicle resold for $995 in February,

---

[4] Proof of commercial reasonableness should be distinguished from those actions under sec. 409.507 (1), Stats., wherein the debtor or any other eligible person is proceeding against the secured party to recover his loss caused by a failure to proceed pursuant to the code. Debtor or other qualified person under the statute, except in the case of "consumer goods," should carry the burden of proof in such a case.

1971, after having had repairs made in the amount of $210.12.

There is no evidence as to what the fair market value of the vehicle was upon deficiency sale; nor did plaintiff establish that the $700 was in fact the wholesale price, or what effect the repairs of the vehicle had upon the value of the automobile itself. There is some evidence of abuse to the vehicle but no evidence as to its effect upon the value. All that was submitted were self-serving assertions that the vehicle was worth $800 to $700 wholesale, and $1595 to $995 retail.

The plaintiff has not sufficiently established that $700 was a commercially reasonable price. There is no requirement or prohibition that the secured party sell at "wholesale" or "retail." All that is required is the best possible price under the circumstances.

Plaintiff argues that the price for which the collateral sells at the deficiency sale is evidence of what the fair market value was. While this argument may have some weight where the collateral is sold at a public sale or auction, such is not the case at private sales. Because of the inherent nature of the private sale, the defendants-debtors do not carry this burden of proof. In addition, plaintiff's witnesses testified at trial that the $700 was the "wholesale" value. This court, in *Boehck Construction Equipment Corp. v. O'Brien* (1966), 29 Wis. 2d 649, 651, 139 N. W. 2d 650, stated:

". . . The wholesale price and the retail sales price are not trustworthy indicators since they obviously reflect prices which, by definition, are either favorable to the original seller or buyer. . . ."

Plaintiff's office manager testified that plaintiff took used automobiles in at wholesale to sell at retail and make money. Such a practice has no place in a private sale of debtor's collateral in that the plaintiff, as secured party, owes the duty to the defendants to use reasonable

efforts to obtain the best price to protect the debtors' interests. The secured party should not "make money" from the sale of the debtors' collateral.

In *Cities Service Oil Co. v. Ferris, supra,* the court held that sale of the collateral at wholesale to the only bidder was not commercially reasonable where there was evidence the collateral was worth substantially more and the secured party was in the business of distributing products of that type through retail outlets and could have received a larger amount for the collateral through the retail outlets. The instant case presents a somewhat similar situation.

Plaintiff's contentions that sec. 409.507 (2), Stats., provides otherwise, are not persuasive. Sec. 409.507 (2), in part, provides:

". . . If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . . ."

The proof submitted would not support a finding that plaintiff sold the automobile in the "usual manner in any recognized market" or at the "price current in such market," or as to "reasonable commercial practices" among dealers in used automobiles. The trial court properly decided that as a matter of law the plaintiff's private sale of defendants' collateral was commercially unreasonable.

The trial court also held that plaintiff failed to show the amount that should reasonably have been obtained through a sale conducted according to law. Upon an examination of the record, it cannot be said that this finding is contrary to the great weight and clear preponderance of the evidence. Therefore, plaintiff in the instant case is precluded from obtaining any deficiency

judgment, and it becomes unnecessary for this court to now decide what right, if any, the plaintiff might have because of its failure to comply with the code.

Defendants on this appeal raise an additional question concerning a determination of the trial court, the correction of which supports the judgment.

The trial court found that the Motor Vehicle Purchase Contract and the Motor Vehicle—Installment Sale and Security Agreement were not filled out at the time of signing; however, the court was of the opinion that this fact did not affect the validity of the contract. The trial court determined that this fact only indicated negligence on defendants' part. The trial court held:

". . . Ignorance of the contents of an instrument does not ordinarily affect the liability of a person who signs it, particularly when he acts negligently and in such a way as to justify others in supposing that the writing is assented to by him. *12 Am. Jur. 628 Sec. 137.* . . ."

Defendants contend that the contract was in violation of the provisions of a statute and, therefore, void. The statute involved is sec. 218.01 (6) (c), which provides:

"(c) An exact copy of the instalment sale contract and any note or notes given in connection therewith shall be furnished by the seller to the buyer at the time the buyer signs such contract. The buyer's copy of the contract shall contain the signature of the seller identical with the signature on the original contract. No contract shall be signed in blank except that a detailed description of the motor vehicle including the serial number or other identifying marks of the vehicle sold which are not available at the, time of execution of such contract may be filled in before final delivery of the motor vehicle."

The trial court committed error when it determined that the signing of the contract in blank did not affect the validity thereof; however, such error was not prejudicial to the cause of the plaintiff.

Not all contracts made in violation of the provision of a statute are void. *Chapman v. Zakzaska* (1956), 273

Wis. 64, 76 N. W. 2d 537. In determining whether such a contract is void, this court has observed that the intent and purpose of the objectives of the legislature must be ascertained. *Posnanski v. Hood* (1970), 46 Wis. 2d 172, 174 N. W. 2d 528.

The purpose of sec. 218.01 (6) (c), Stats., is the protection of the purchasers of automobiles, individually, and as a class. Where the signing of such contracts is prohibited by law for the protection of automobile purchasers, those dealers who ignore the law should not be allowed to benefit therefrom.[5]

Sec. 218.01 (8) (c), Stats., provides that any person who violates the provisions of sec. 218.01 (6) (c) shall be subject to a fine, jail term, or both. This court has stated that a contract made in violation of statute is void, whether there is a prohibition and a penalty or merely a penalty. *Perma-Stone Corp. v. Merkel* (1949), 255 Wis. 565, 39 N. W. 2d 730; *Guardian Agency v. Guardian Mut. Savings Bank* (1938), 227 Wis. 550, 279 N. W. 79.

There is evidence in the record that such a practice is the normal operation of plaintiff. Such conduct is not condoned when the legislature has specifically forbidden it.

We, therefore, affirm the judgment of the trial court finding that the plaintiff's sale of defendants' collateral was not "commercially reasonable," and that the plaintiff failed to carry his burden of proof as to the amount, if any, of the deficiency.

*By the Court.*—Judgment affirmed.

---

[5] *See:* 17 Am. Jur. 2d, *Contracts*, p. 607, sec. 228.