JEFFREY B. BARTELL Commissioner of Securities
You have requested my opinion concerning the effect of ch. 135, Stats., (the "Wisconsin Fair Dealership Law") upon ch. 553, Stats., (the "Wisconsin Franchise Investment Law") which is administered by your office.
You indicate that the relationship between the two chapters becomes relevant to your office by virtue of the fact that a "franchise" as defined in sec. 553.03 (4)(a), Stats., could also be a "dealership" as defined in sec. 135.02 (2), Stats. If this is the case, you state that all franchise offerings registered or exempted by your office under ch. 553 would also have to comply with ch. 135. This raises the two questions you have posed.
1. May a "franchisee," defined in sec. 553.03 (5), Stats., waive or modify any rights or remedies provided to him under ch. 135, Stats.
2. Does the Commissioner of Securities have the authority, under sec. 553.28 (1)(h), Stats., to deny, suspend or revoke the franchise registration or revoke the franchise exemption of any offering that contains provisions contrary to ch. 135. You also ask whether you have the right to excise these provisions from the contract and whether denial or revocation of a franchise offering could be based on public policy grounds even if a dealer waives his statutory rights and remedies.
QUESTION ONE
Your question regarding a dealer's (franchisee's) waiver of the provisions of ch. 135 poses four hypothetical examples.
 (1) the dealer expressly waives and renounces his remedies under ch. 135.
 (2) the dealership agreement contains provisions by which the dealer agrees that all aspects of the contract are reasonable, thereby eliminating the protective "good cause" provision of sec. 135.02 (6)(a), Stats.
 (3) the dealership agreement deviates from the provisions of sec. 135.04, Stats., which require 90 days prior notice *Page 12 
of termination and a 60-day period for rectification of deficiency by the dealer.
 (4) an explicit provision whereby the parties contract that the dealership agreement will be governed by the laws of a state which has no Fair Dealership Law.
 Example One: The central question in situations where parties to an agreement seek a waiver of statutory provisions is whether public policy or public welfare concerns exist within the statute. If they are present, the terms of the statute cannot be waived by the parties to a contract. The Wisconsin Supreme Court, in Pedrick v. First National Bank of Ripon, 267 Wis. 436, 439,66 N.W.2d 154 (1954), stated:
 "`An agreement is against public policy if it . . . violates some public statute, . . .' 12 Am. Jur. Contracts, p. 663, sec. 167. `. . . courts of justice will not recognize or uphold any transaction which, in its object, operation. or tendency, is calculated to be prejudicial to the public welfare, to sound morality, or to civic honesty. The test is whether the parties have stipulated for something inhibited by the law or inimical to, or inconsistent with, the public welfare.' . . . Agreements against public policy or prohibited by public law `. . . cannot be enforced by one party against the other, either directly or indirectly by claiming damages or compensation for breach of them.' 12 Am. Jur., Contracts, p. 715, sec. 209."
In Kuhl Motor Co. v. Ford Motor Co., 270 Wis. 488,71 N.W.2d 420 (1955), the court considered a statute (sec. 218.01 (3)(a), Stats.) which protected motor vehicle dealers from unwarranted termination by automobile manufacturers much in the same way that dealers are protected under ch. 135. The Kuhl court found that a waiver of the dealership protection law under examination would be against public policy and void. See also Posnanski v. Hood,46 Wis.2d 172, 180, 174 N.W.2d 528 (1970); Vic Hansen Sons, Inc.v. Crowler, 57 Wis.2d 106, 117, 203 N.W.2d 728 (1973).
An examination of ch. 135 indicates that, as in Kuhl, it seeks to abolish an inequality between the contracting parties. Section135.03, Stats., flatly prohibits improper termination of a dealership. Section 135.05 provides that no agreement for binding arbitration may contain criteria that would provide protection less than that afforded by ch. 135. Under sec. 135.06, Stats., damages are measured *Page 13 
as a consequence of the grantor's "violation" and injunctive relief can be granted for "unlawful" termination. (Emphasis supplied.) The import of ch. 135 is clearly to protect against overreaching due to an inequality between the parties. The terms of the statute bring it well within the category of statute that expresses public policy and seeks to protect the public welfare. Consequently, it is my opinion that the provisions of ch. 135 cannot be waived.
Example Two: This example differs front the first only in that the waiver is implicit rather than explicit. By agreeing that all terms of the contract are reasonable, the dealer effectively precludes his right to challenge a termination based upon his failure to comply with "reasonable" requirements of the dealership agreement. See sec. 135.02 (6)(a), Stats. My conclusion is the same as in example one. The provisions of ch. 135 cannot be waived.
Example Three: Your third example involves a reversal of the statutory notice provision in sec. 135.04 (which requires a 90 day notice of termination of dealerships and 60 day right of the dealer to cure the deficiency upon which the termination is based). The legislature has set forth a legislative scheme designed to achieve its public policy objectives. To sanction any changes therein would threaten the scheme itself and enable the grantors of dealerships a legal basis to exact waivers of ch. 135 and subsequently seek to sustain their validity on this legal premise. Furthermore, the terms of sec. 135.04 are mandatory in nature and leave little room for a liberal construction. It is my opinion that the waiver in example three of your inquiry should also not be recognized.
Example Four: Your fourth example asks whether the parties can stipulate that the laws of another state shall apply. If the dealership transaction falls within Wisconsin's enforcement jurisdiction then the previously discussed prohibition against waiver would apply. See also Estate of Knippel, 7 Wis.2d 335,342, 96 N.W.2d 514 (1959), which holds that contracts intended to commit a fraud on the law are invalid. This view is also supported by Corbin in his treatise on contracts:
 ". . . It would be regarded as contrary to sound policy to enforce a bargain that by the domestic law of the forum would not be valid, if the demonstrated purpose of a provision that the law of another state shall be applicable is to enable the citizens *Page 14 of the forum to nullify requirements of the local law." Corbin, Contracts, sec. 1446, pp. 486-487. (Emphasis supplied.)
Once it is determined that Wisconsin public policy is involved in the transaction, and it is further determined that the transaction itself is subject to the enforcement jurisdiction of the state, then it can be stated that the parties cannot contractually waive or modify the effect of the statute. To do so would defeat its purpose.
QUESTION TWO
Your second question asks whether the violation of ch. 135 can be used as a basis for denial, suspension and revocation of franchise registrations or exemptions pursuant to sec. 553.28
(1)(h), Stats. You also ask whether you can require that contractual terms found in violation of ch. 135 be stricken from franchise agreements subject to ch. 553.
Section 553.28 (1)(h), Stats., permits denial, suspension or revocation of any registration statement or the revocation of any exemption if the Commissioner finds:
 "(h) that the franchisor's enterprise or method of business includes or would include activities which are illegal where performed."
It seems quite clear that a franchisor's franchise agreement involves his "method of business." His income is derived not from retail sales or services but, directly or indirectly, from the various provisions of the agreement. The contractual right to terminate a franchisee would manifestly affect the relationship between the parties and thus the "business" of the franchisor.
The second aspect of the question is whether inserting provisions in the franchise agreement which would violate ch. 135, Stats., is an "illegal activity." Illegal is defined inBlacks Law Dictionary (4th Ed.) at p. 882 as conduct "not authorized by law" or "contrary to law." Chapter 135 is sufficiently explicit in its terms to indicate that noncompliance therewith is illegal as above defined. Section 135.06 speaks in terms of one who "violates" this chapter and the grantor's "violation" and "unlawful" termination. The fact that no penalty attaches to a violation of ch. 135 is not material to the question. A prohibition alone is sufficient. Menominee River B.Co. v. Augustus *Page 15 Spies L C Co., 147 Wis. 559, 571, 132 N.W. 1118 (1912), and KuhlMotor Co. v. Ford Motor Co., supra, at p. 498.
Note that it is not necessary that the illegal provisions become operative before you may exercise your authority under sec. 553.28 (1) (h), Stats. "The test is whether the parties havestipulated for something inhibited by law." (Emphasis supplied.)Pedrick v. First National Bank of Ripon, supra, 267 Wis. (1954), at p. 439.
It is therefore my opinion that contractual provisions evidencing a violation of ch. 135 would be illegal conduct within the purview of sec. 553.28 (1)(h), Stats. Accordingly, you would have the right to deny, suspend or revoke a franchise registration or exemption which contained any such provisions. Although I can find no authority which would authorize you to unilaterally excise offending provisions, it would seem that you could require the parties to do so as a condition of registration or exemption.
Since I have found that statutory rights and remedies granted under ch. 135 are not waivable, your question concerning denial and revocation of a franchisor's registration, if they were waivable, need not be answered.
BCL:BAC