**In re Henry David HAMBY and Gay F. Hamby, Debtors.**

**Bankruptcy No. 81–00815.**

United States Bankruptcy Court, N. D. Alabama.

April 6, 1982.

Hank Fannin, Talladega, Ala., for debtors.

Douglas L. Key, Birmingham, Ala., for Central Bank of Alabama, N.A.

### ORDER ON OBJECTION TO CLAIM

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

### STATEMENT OF CASE

The above-styled Chapter 13 case came before the Court, at Talladega, Alabama, for a hearing upon the objection by the debtors to the claim filed by Central Bank of Alabama, N.A. (claimant), as assignee of Collins Pennington Ford, Inc. Said claim (number 8) is for $3,504.63. At the hearing, testimony was received from Henry David Hamby (Mr. Hamby), Gay F. Hamby (Mrs. Hamby), and Gerald Liner, an employee of the claimant, and six exhibits from the claimant were received into evidence. After considering the evidence received and the applicable law, the bankruptcy judge

finds that the debtors' objection is due to be sustained.

## FINDINGS OF FACT

From the testimony and exhibits, the bankruptcy judge finds the facts to be as follows:

1. The claimant had the debtors' 1979 model "Ford Thunderbird" automobile repossessed on February 13, 1980, from where Mrs. Hamby had parked it (near the place of her employment) and while she was working.

2. The repossession left Mrs. Hamby without knowledge of what had happened to the automobile and without transportation when she got off from work at 9:00 o'clock at night. Her place of employment was in Anniston, Alabama, over 25 miles from their residence on a Talladega, Alabama, rural mail route. Mrs. Hamby reported the apparent theft of this automobile to the police. At no time prior to, during, or immediately after the repossession did the claimant have any contact with either debtor in regard to the repossession.

3. At the time the claimant repossessed the debtors' automobile, the debtors were indebted to the claimant upon an assigned sale contract covering a credit sale of the vehicle to them and were in default in the payments on the indebtedness. The sale contract gave claimant's assignor a security interest in the debtors' automobile, as collateral for the payment of that indebtedness.

4. On February 14, 1980, the claimant sent to each debtor a notice of repossession, which stated the claimant's intention to offer the automobile for sale, "after 5:00 p. m. on February 21, 1980, and from day to day thereafter until sold." A receipt dated February 16, 1980, for each of these letters, has the purported signature of Lawrence Freeman upon it. Mrs. Hamby acknowledged receiving the letter addressed to her, but Mr. Hamby did not remember seeing the letter addressed to him; however, he did call the claimant the day after the repossession to ask if he could pay off the car debt.

5. Lawrence Freeman was Mr. Hamby's brother-in-law and lived in a "trailer" on the debtors' "place".

6. Also, on February 14, 1980, the claimant sent to each debtor, on a form letter (to which was added the loan contract number and a description of the automobile), notice that some item or items of personal property had been found in the repossessed automobile and placed in safekeeping and could be claimed upon proper identification of the property. The notice further advised that the claimant would give the property to a charitable organization and obtain a receipt if " . . . we do not hear from you within (10) days from the date of this letter. . . ."

7. The debtors had various items of personal property in their automobile when the claimant had it repossessed. They made no written request that these items be returned; however, they recovered some of their personal property after the repossession, including doormats, pliers, screwdrivers, and wrenches. This was accomplished on the second or third day after the repossession of the automobile, when Mr. Hamby telephoned claimant and found that the automobile was at Albertville, Alabama, some 75 miles from his residence. He then went to claimant's branch there to see the automobile but was referred to a different location—an automobile sales lot. On inspecting the vehicle, Mr. Hamby found that his "Remington" "30.06" semiautomatic rifle, his 12-gauge semi-automatic shotgun, and his "C.B." two-way radio were missing from the automobile trunk or rear interior. He informed the person in charge of the car lot of the fact that this property of his was missing but received no satisfaction and never recovered the missing items, which had a fair market value of $690.00.

8. The contract between the debtors and the claimant's assignor contains, *inter alia*, a clause stating that, "[i]f the Collateral is repossessed by the Seller, Buyer agrees to send notice by registered mail to the Seller, within twenty-four (24) hours after repossession, if Buyer claims that any article(s) not listed on the reverse side hereof was

contained in the Collateral at the time of repossession, and· agrees that failure to do so shall be a waiver of and bar to any subsequent claim for such article(s)."

9. Said waiver and bar clause is contained within seventy-three (73) lines of small print on the back of the contract and under the heading, "ADDITIONAL TERMS, COVENANTS AND CONDITIONS", below which is another paragraph of small print with the heading, "GUARANTY OF PAYMENT", below which are spaces for the guarantors' signatures and yet another paragraph of small print with the heading, "DEALER'S ASSIGNMENT", with space for the assignor's signature. The contract was largely printed, fully occupied both sides of a legal-size paper, and prominently displayed the claimant's name and symbol at the top left of the front side of the document. The contract was drafted by claimant's assignor, using claimant's form.

10. Above the debtors' signatures, on the front side of the contract, the following is printed:

THE PROVISIONS APPEARING ON THE REVERSE SIDE HEREOF CONSTITUTE A PART OF THIS INSTRUMENT.
CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU *SIGN* IT.

11. After incurring repossession and preparation-for-sale expenses of $440.49, the claimant sold the debtors' automobile for $3,400.00, by private sale to Huntsville Auto Sales, Inc., no other bid having been obtained by claimant.

12. When repossessed by claimant, the automobile was approximately one year old, had been driven about 25,000 miles, had no scratches on it, had not been wrecked, and had a fair value on the wholesale market of $4,000.00. Its new, cash purchase price had been $7,365.50.

13. The claimant's disposition of the automobile was not in every aspect commercially reasonable.

14. The claimant brought suit against the debtors for an alleged deficiency of $3,017.07 and an attorney's fee of $452.56. In this subsequent Chapter 13 case, claimant filed for those sums and $35.00 court costs, for a total claim of $3,504.63, as previously stated.

15. The time price differential stated in the contract was $2,260.67.

## CONCLUSIONS OF THE COURT

The debtors' objection to the claimant's claim appears to be based upon three alleged rights of setoff which the debtors assert that they have against the claimant, as follows:

A. Wrongful repossession of their automobile;

B. Conversion or negligent loss of the items of personal property which were in the debtors' automobile when it was repossessed and which were not recovered; and

C. Disposition of the debtors' automobile other than in a commercially reasonable manner, contrary to the requirements of Article Nine of the Uniform Commercial Code of Alabama.[1]

### A. *The Repossession.*

.There was no contention that the claimant did not have the right to repossess the debtors' automobile pursuant to the contract and Alabama Code § 7–9–503. The payments upon the debt were in default and there was no agreement otherwise.

█ The claimant did not breach the peace in repossessing the debtors' automobile nor did the creditor repossess the debtors' automobile through improper trickery, fraud, artifice, or stealth, as was found in *Ford Motor Credit Co. v. Byrd,* 351 So.2d 557 (Ala., 1977). The claimant's act of repossessing the debtors' automobile at night, while it was parked near Mrs. Hamby's place of employment as she was working,

1. Ala.Code § 7 9 101 to 507.

was not impermissible under the provisions of Alabama Code § 7–9–503.[2]

The insensitivity of claimant in not informing Mrs. Hamby of what had happened to their automobile and leaving her stranded at night away from home was not made an issue in this case. The Court, therefore, will not address the consequences to claimant of the stress caused to Mrs. Hamby, as an unnecessary incident to the exercise of its right to repossess the automobile.

### B. *Loss of Debtors' Personal Property.*

The debtors allege that the claimant converted their "30.06" rifle, "12-gauge" shotgun, and "C.B." radio when it repossessed their automobile. The claimant seeks to interpose the contract clause set out in FINDING OF FACT Number 8 as an absolute bar to being held liable for loss of the debtors' personal property. The debtors will prevail in this respect, as the contractual provision relied upon by the claimant does not deny to the debtors the right to setoff the debt owed by the claimant, because of the loss of the debtors' personal property, against the claimant's claim in this bankruptcy case.

*Firstly—Inapplicability of an Ambiguous Clause.*

It is well established in Alabama that the terms of a contract, if ambiguous or uncertain, are to be construed more strongly against the party who drew it.[3] Although in this case, there appears to be no ambiguity in the contract such as would, for resolution, require the introduction of extrinsic evidence, it still remains for the Court to determine the legal effect of the contract's terms as they bear on the contested matter before the Court.

■ The clause in question purports to constitute the debtors' failure "to send notice by registered mail to the Seller, within twenty-four (24) hours after repossession" as a "waiver of or bar to any subsequent

claim for such article(s)". This provision of the contract cannot be applied literally to this case, for the debtors have not made a claim for such articles. The debtors have neither filed a complaint against the creditor claiming the articles nor asserted against it a counterclaim for them. The value of the articles lost is asserted as a setoff against the claim filed by the creditor. The ambiguity found in the question of whether the contract clause results in a waiver or bar of the debtors' right to set off the value of the articles lost against the creditor's claim filed in a case under Chapter 13 of the bankruptcy law cannot be resolved in favor of the creditor by extending its own words to include something not plainly stated. The debtors' objection to the claim—to the extent based upon loss of the rifle, shotgun, and radio—asserts a matter arising out of the transaction upon which the creditor's claim is based and clearly is a setoff and is not a claim or counterclaim for the articles lost when the automobile was repossessed.

This clause is further ambiguous by stating that the notice shall be sent to the "Seller"; but to what purpose? Thus is created a question as to whether the notice should be sent to the assignee of the contract rather than the seller, when the contract has been assigned as contemplated. The automobile purchaser might be justified in sending the notice to either, but certainly the assignee could not have the clause construed to the prejudice of a purchaser who gave the notice to it. Perhaps the clause is unenforceable for uncertainty.

*Secondly—Nonenforcement of an Unconscionable Clause.*

■ By attempting to limit liability for loss of a person's property in a repossessed vehicle to only those instances where a registered mail claim is sent within 24 hours to the party who repossesses the vehicle, the drafter of such a clause is attempting to

2. *Reno v. General Motors Acceptance Corp.,* 378 So.2d 1103 (Ala.1979); *Ford Motor Credit Company v. Ditton,* 52 Ala.App. 555, 295 So.2d 408 (1972).

3. *Travelers Insurance Company v. Kernachan,* 283 Ala. 96, 214 So.2d 447 (1968), and cases cited therein.

foreclose the assertion against the repossessing party of virtually all claims for such property—both legitimate claims and spurious. The near-impossible likelihood of compliance with such a provision is especially clear in the present case.

This onerous clause is buried in a tangled mass of fine print on the reverse of a long and complex contract, covering the credit-sale of a consumer-purchased automobile. If it may be expected that the intended victim of this clause will have the absolutely-unimpaired or corrected vision necessary to read this clause or can do so with the aid of a magnifying glass and straight-edge ruler, will it be read by such person before a repossession occurs? The statement required on the obverse of the contract which cautions that it is important thoroughly to read the contract before signing it is virtually meaningless in the context of this long contract for a consumer-purchase of an automobile, but it might be read later—although not likely. Assuming that the clause had been read, would the purchaser remember at the time of repossession of the automobile that there was such a clause and have any chance to comply with its terms?

The clause specifies a notice by registered mail, which would require access to an open post office, but it makes no exception for Saturdays, Sundays, or holidays, when post offices would be closed part or all of the day. By limiting to 24 hours after repossession the time for sending the notice, the contract clause appears designed to prevent compliance with its requirements rather than to serve some legitimate purpose of the repossessing party. A pressing need to dispose of the collateral within a reasonable time does not require that the rights of the debtor not to be wrongfully deprived of other property be jettisoned. A reasonable manner for giving the notice and a reasonable length of time for giving it, would per-

mit the creditor to sell the automobile without undue delay, after an adequate opportunity to examine the vehicle for the property claimed by the debtor.

The clause in question is particularly unconscionable where, as here, the automobile is taken from the debtors without any opportunity for them to remove their belongings from it.

The creditor here does not contend that the debtors did not give it adequate notice of their claim for the rifle, shotgun, and radio or that the man at the used car lot, with whom Mr. Hamby dealt was not its agent. It offers no denial that the property was in the vehicle at the time of repossession and offers no explanation of what happened to it. It says that no notice was given by the means or within the time provided in the contract.

Before proceeding further it is necessary to note a distinction between this case and *Thompson v. Ford Motor Credit Co.*, 550 F.2d 256 (5th Cir. 1977), in which a similar clause was held to bar a claim for conversion of or trespass to chattels. There, the Court noted that debtor did "not question the validity of the provisions of the contract." Here, the Court expressly considers the validity of the clause, on the objection to the creditor's claim.

█ In doing so, effect must be given to the law on "Consumer Finance" in Alabama, which provides that the Court may limit the application of a contract provision, found to be unconscionable as a matter of law, so as to avoid any unconscionable result.[4] The Court finds that the clause in question is unconscionable as a matter of law [5] and limits its application so as to preserve the debtors' rights in regard to loss of the property in question. By virtue of the statutory authority, the Court is not

---

4. Ala.Code § 5–19–16, which states:

With respect to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds the agreement or any provision of the agreement to have been unconscionable before, after or at the time it was made, the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result.

5. *See Majors v. Kalo Laboratories, Inc.*, 407 F.Supp. 20 (M.D.Ala.1975).

required to consider the exercise of its equity powers.[6]

*Thirdly—Performance as Modifying Contract.*

■ Under the *Uniform Commercial Code*, the parties to a contract may modify or waive its terms without the formalities of a written contract.[7] As indicated by Chief Judge Brown in *T. J. Stevenson & Co. v. 81,193 Bags of Flour*,[8] a contract does not magically freeze the relationship between the parties. And Judge Gewin noted, in *Stauffer Chemical Co. v. Brunson*,[9] "that alteration, modification or waiver of contract provisions may be implied from the acts and circumstances surrounding the performance of such contract."

But exactly what did the contract clause as written intend? It states that failure to send the registered-mail notice within 24 hours after repossession "shall be a waiver of and bar any subsequent claim for such article(s)." To what does the word "claim" refer? Does it refer to the right to obtain the articles from the repossessing party or the right to make a claim for monetary damages against it for loss of any article not recovered or both? Here lies another ambiguity in the contract clause.

Rather than resting reliance upon the contract clause which required a registered-mail notice within 24 hours of repossession, the claimant sent its own letters to the debtors, giving them ten days to claim the personal property found to be in the repossessed automobile. On the second or third day after the repossession, Mr. Hamby made the 150 mile round trip to obtain the property. His effort proved futile except for the few inexpensive items recovered.

In sending its own letters, perhaps the claimant had little confidence in reliance upon the ambiguous but onerous contract clause, or perhaps it had, at that time, no desire to enforce it to an unconscionable result. Certainly the conduct of the parties modified the clause so as not to foreclose the debtors' right to retake possession of the articles, if the clause was intended to waive or bar that right, upon failure to give the notice in the manner specified. In addition, the claimant would be estopped from barring the debtors from recovery of their property, after Mr. Hamby undertook the trip to do so, in reliance upon the invitation (letters) of the creditor.

Once the creditor undertook to deliver the articles to the debtors upon proper identification of the articles, it should have done so. Upon its failure in this regard, it cannot fall back upon the contract clause to shield it from the debtors' setoff of damages for such failure. This results both from a modification of the contract and from an estoppel. If the claimant contends that enforcement of the contract clause was reasonable and necessary so that it might avoid claims against it for loss of property of which it was unaware following a repossession or spurious claims, at the same time that it undertook a reasonable effort to allow a debtor to reclaim property found in a repossessed automobile, this overlooks the fact that the debtors here have a setoff for its failure to perform the latter obligation under a modification of the contract, as contrasted with a "subsequent claim for such article(s)," arising from breach of some duty under the involuntary bailment which began when the automobile was repossessed. In other words, the modification of the contract created new obligations on the claimant and new rights in the debtors to which the bar and waiver clause did not relate.

### C. Disposition of the Automobile Not in a Commercially Reasonable Manner.

■ Two things stand out in the disposition by the claimant of the debtors' automobile through a private sale. The claimant only obtained one bid and sold the vehicle on that bid, although $600.00 or 15% below the wholesale value of the collateral. Nei-

---

**6.** See 28 U.S.C. § 1481.

**7.** Ala.Code § 7‑2‑209.

**8.** 629 F.2d 338, 365 (5th Cir. 1980).

**9.** 380 F.2d 174, 182 (5th Cir. 1967).

ther the obtaining of only one bid nor the sale at substantially less than wholesale value was the product of the condition of the automobile, as far as the evidence showed. The vehicle was about a year old, had been driven about 25,000 miles, had no scratches on it, and had not been wrecked. Why did the claimant obtain only one bid and that for only $3,600.00? If not due to a "sweetheart" relation with the purchaser, these circumstances indicate a lack of any reasonable diligence in trying to obtain an adequate sum in selling the collateral. This in turn shows that the sale was not commercially reasonable, although the *Uniform Commercial Code* requires that this element be present in "every aspect of the disposition including the method, manner, time, place and terms." [10]

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." [11] But when evidence was introduced to show that the secured party only obtained one bid and sold the collateral at only 85% of its wholesale value, this showed an absence of a commercially reasonable sale, unless the claimant then went forward and showed circumstances of commercial reasonableness. None was shown.

Commercial transactions must have as their purpose the obtaining of a profit as opposed to the incurring of a loss, if they are to be deemed reasonable. A method of sale which produces only one bid and a sale at 15% below wholesale value is calculated to produce a commercial loss and if such a method is consistent and is persisted in, a commercial or business failure will result.

It is not a reasonable method in the commercial setting. If the method of sale employed by the claimant was not of this character, appropriate distinctions should have been shown by the secured party. In fact, it has been held—perhaps correctly—that the secured party has the burden of proof, if a *private* sale of the collateral is challenged.[12]

The debtor has a legal right to intervene if the secured party is employing a nonconforming method of disposition of the collateral,[13] but in reality the creditor is practically unsupervised in selecting the method of disposition and in carrying it out. The creditor is certainly the best informed of the parties concerning the circumstances of a disposition by means of a private sale. Why, then, should it not justify (if justifiable) a private sale when the sale is challenged, rather than for the Court to presume that the sale was uncorrupted and otherwise meets the test of a reasonable business practice?

The Uniform Commercial Code definition of "goods" [14] includes tangible personal property, such as an automobile. The automobile here is to be classified as "consumer goods," [15] as there was no indication that it was purchased or used except for personal or family purposes, such as going to and from a place of employment.

The *Uniform Commercial Code* provides that when consumer goods are disposed of in a nonconforming manner, the debtor may recover at least "the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price." [16] The time price differential being stated in the contract as $2,260.67, and ten percent of the cash price of $7,365.50 being $736.55,

10. Ala.Code § 7–9–504(3).

11. Ala.Code § 7–9–507(2).

12. *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis.2d 106, 203 N.W.2d 728 (1973) [11 UCC Rep.Serv. 1089].

13. Ala.Code § 7–9–507(1).

14. *Id.* § 7–9–105(1)(f).

15. *See id.* § 7–9–109(1); *Cf. id.* § 7–9–302(1)(d) (excepting a purchase-money security interest in consumer goods from the requirement that a financing statement must be filed to perfect a security interest, but providing that filing is required for a motor vehicle required to be licensed) [now, *registered*].

16. *Id.* § 7–9–507(1).

and the value of the guns and radio lost being $690.00, the debtors have a setoff of $3,687.22. Since this exceeds the claimant's claim for $3,504.63, an order will be entered, sustaining the debtors' objection to this claim (no. 8).

## ORDER OF THE COURT

In accordance with the foregoing findings of fact and conclusions by the Court, it is ORDERED by the Court that the objection by the debtors, Henry David Hamby and Gay F. Hamby, to claim number 8, filed by Central Bank of Alabama, N. A., in the sum of $3,504.63, is sustained, that said claim is expunged from this case and adjudged to represent a claim which is not enforceable against either debtor or the estate of either debtor, and that a copy hereof shall be sent through the United States mails to each of the following (which shall be sufficient service and notice hereof): the debtors, their attorney, the claimant, its attorney, the Chapter 13 trustee, and the United States trustee.