**UNITED STATES of America**

v.

**John PAYNE.**

**Cr. No. 11805.**

United States District Court
D. Connecticut.

July 25, 1967.

John Cassidento, Asst. U. S. Atty., New Haven, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the brief), for the United States.

William B. Ramsey, New Haven, Conn., for Allegheny Mutual Casualty Co.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

The essential question presented by the motion of Allegheny Mutual Casualty Company (hereinafter "the corporate surety"), pursuant to Rule 46(f) (2) and (4), Fed.R.Crim.P., to set aside the default judgment entered by the Court upon the declared forfeiture of defendant John Payne's bail, is whether the corporate surety discharged its duty to supervise defendant with sufficient care so that "it appears that justice does not require the enforcement of the forfeiture." [1]

The Court holds that the circumstances of this case reveal inadequate supervision by the corporate surety of a defendant known to be a poor risk; failure to enforce forfeiture of bail under such circumstances would nullify the significance of release under surety bond. The instant motion therefore is denied.

1. Rule 46(f) (2), Fed.R.Crim.P.; see also Rule 46(f) (4), Fed.R.Crim.P.

## FACTS

The following undisputed facts appear from the Court records in this case, and from the documents and oral testimony received in connection with the instant motion.

Defendant John Payne, of Jersey City, New Jersey, was charged, with two other defendants, in a four count indictment filed September 9, 1966 with certain violations of federal laws [2] arising out of the hijacking of a truck in the District of Connecticut on August 9, 1966.

Defendant's release by a United States Commissioner in the District of New Jersey was conditioned upon the execution of a $2500 appearance bond with surety; bond in that amount was posted by Johnson H. Smith, an authorized agent of the corporate surety, on behalf of defendant, and was accepted and continued by this Court pending entry of plea.

On October 24 defendant failed to appear for purposes of plea as ordered by the Court; bond was called, a new bond of $7500 with surety was set, and a bench warrant was issued. On October 31 the Court set aside its October 24 order calling the original bond and for issuance of the bench warrant, and reinstated the original $2500 surety bond.

On November 14 defendant's plea of not guilty to the four counts of the indictment was entered, and the same bond was continued pending trial.

Defendant's original address on the bond had been given as 45 Orient Avenue, Jersey City. Some time later defendant moved to 622 Ocean Avenue, Jersey City, without informing the corporate surety; Smith learned of the change of address from a third person. The corporate surety's offices were at 675 Ocean Avenue. At one point Smith had occasion to see defendant two or three times a week; the subject of defendant's failure to notify his surety of the change of address was never raised by Smith, and apparently no effort was made by the corporate surety to provide for continued verification of the accuracy of the new address.

On January 10, 1967, court appointed counsel for defendant filed a motion for permission to withdraw from the case; the motion was noticed for hearing on January 16. On Friday, January 13, copies of the Court's order to defendant to appear for the purposes of such hearing were sent by certified mail, return receipt requested, to defendant at 622 Ocean Avenue, Jersey City, and to the corporate surety at 675 Ocean Avenue, Jersey City.

Some time prior to January 14, perhaps as long as two to three weeks prior to that date, defendant again had changed his place of residence, on this occasion moving across the street to 623 Ocean Avenue. The corporate surety was unaware of the change of address.

On Saturday, January 14, the Court's notice was delivered to the closed offices of the corporate surety; actual notice was not received by Smith until the day of the hearing, Monday, January 16. The notice to defendant subsequently was discovered unopened in the mail box at 622 Ocean Avenue.

On January 16 defendant failed to appear before the Court. For breach of condition of the appearance bond, bail was ordered forfeited, pursuant to Rule 46(f)(1), Fed.R.Crim.P. A bench warrant was issued, and new bail was set at $25,000 with surety.

Defendant having been apprehended and confined in lieu of posting bond in such increased amount, on February 1 the Court ordered his release to the custody of his counsel, conditioned upon the execution of a $2500 appearance bond and the deposit in the registry of the Court of the sum of $250.[3]

On February 15 the jury trial commenced. Defendant failed to appear; the most recent conditions of release

2. 18 U.S.C. § 2312; 18 U.S.C. § 2314; 18 U.S.C. § 659; and 18 U.S.C. § 371.

3. Pursuant to the Bail Reform Act of 1966, 18 U.S.C. § 3146(a) (1) and (3).

were revoked, another bench warrant was issued, and new bond was set at $25,000 with surety.

The defendant subsequently was apprehended and produced for trial; a verdict of guilty as charged on the four counts of the indictment was returned at the conclusion of the seven day trial on February 23.

On March 28 the government filed its motion for judgment of default, pursuant to Rule 46(f) (3), Fed.R.Crim. P., in connection with the appearance bond forfeiture of January 16; on May 25 the motion was granted after a full hearing, and judgment was entered on May 26.

The instant motion was filed June 6, and was fully heard June 26.

## OPINION

This Court has long been concerned with fashioning appropriate conditions of release for persons accused of crime pending a determination of guilt or innocence by means of trial. Long prior to enactment of the Bail Reform Act of 1966, 18 U.S.C. §§ 3146–3152, release upon personal recognizance or upon execution of an unsecured appearance bond was granted whenever such conditions seemed to give adequate assurance of a defendant's appearance in response to orders of the Court. By contrast, underlying any order requiring execution of a surety bond as a condition of release has been a determination that a particular defendant's appearance before the Court can be sufficiently assured only by means of a certain amount of third-party supervision.

The significance of the Court's selective imposition of varying conditions of release has been heightened rather than diminished by the passage of the Bail Reform Act of 1966. The Act places a premium upon freedom from detention prior to trial;[4] consequently, ordering execution of a surety bond is deemed appropriate only if several alternative conditions of release expressly set forth in the Act[5] will not "reasonably assure" the particular defendant's appearance.[6]

The requirement of a surety clearly entails a decision by the Court that defendant's representations of an intent to cooperate, or even a financial stake of the accused alone in continued cooperation, will not adequately ensure obedience to the Court's orders. It is apparent that the third person acting as surety has a duty to the Court to see that the principal complies with the Court's orders; implicit in that duty is an undertaking of the minimum supervisory effort adequate to accomplish defendant's continued obedience to the Court.

In the instant case, that duty was not carried out because of inadequate supervision of defendant by the surety. Defendant's failure to appear before the Court on January 16 was not simply an unfortunate accident caused by mailing of notice to the wrong address; noncompliance with the Court's order could well have been avoided if the surety had exercised the degree of care reasonably to be expected of it under the circumstances.

Prior to the incident with which the instant motion is concerned, defendant had already once failed to appear as ordered by the Court. Bond having been reinstated, defendant proceeded to change his place of residence without informing his surety. The surety learned of the change of address through a third person. The new address was near the surety's offices, and defendant was seen by the surety's agent, Smith, two or three times a week during one period. Defendant's failure to notify his surety of the change of address was never discussed with defendant by the surety, and the surety apparently made no effort to keep a continuing check of defendant's whereabouts, in spite of its obvious knowledge of defendant's behavior as at best absent-minded. Defendant did in

---

4. See 18 U.S.C. §§ 3146–3147.

5. See 18 U.S.C. § 3146(a).

6. As determined by weighing certain factors enumerated in 18 U.S.C. § 1346(b).

fact move a second time without informing his surety, and seemingly never received the notice of appearance mailed on January 13 to his former address. When Smith learned of defendant's failure to appear on January 16, and tried to locate him at his last-known address, the current occupants of the premises stated that defendant had moved two or three weeks previously. It was during this very interval that Smith was seeing defendant two or three times a week.

 The surety's supervision of its principal was wholly inadequate. The causal relationship of neglect of duty to defendant's failure to appear is quite evident. Although the surety's subsequent assistance given federal authorities in securing custody of defendant is to be commended, it does not excuse the surety's prior failure to discharge its obligation to the Court.[7]

If a viable middle ground between virtually unconditional release and outright confinement of a person accused of crime is to be maintained, the Court must be able to rely on the effectiveness of suretyship arrangements. The reason for requiring execution of a surety bond is the Court's determination that a particular defendant is a relatively poor risk. The significance of the surety bond lies in the increased assurance of a defendant's compliance with the Court's orders, such assurance being founded upon the surety's continuing supervision for the purpose at least of protecting its investment against the threat of forfeiture upon a breach of condition of the bond by defendant.

Where, as here, the surety did not perform its minimum duty of adequate supervision, and its laxity contributed to defendant's failure to appear before the Court as ordered, non-enforcement of forfeiture would render requirements of appearance bonds with surety meaningless. The instant motion accordingly must be denied.

7. See Smith v. United States, 357 F.2d 486, 490 (5 Cir. 1966); United States

## CONCLUSION

The Allegheny Mutual Casualty Company having failed to establish that justice does not require the enforcement of the forfeiture of bond declared with respect to defendant for failure to appear before the Court on January 16, 1967, as ordered, the instant motion, pursuant to Rule 46(f) (2) and (4), Fed.R.Crim. P., to set aside the judgment of default entered upon said forfeiture is denied.

v. Public Service Mutual Insurance Company, 282 F.2d 771, 772 (2 Cir. 1960).