STATE, Plaintiff-Respondent, v. BRAUN, Defendant-Respondent: Jeanette DULDE, in Her Own Person and as a Personal Representative for the Estate of Arthur Dulde, Appellant.†

Court of Appeals

*No. 78–082–CR. Submitted on briefs January 25, 1979.—*
*Decided October 5, 1979.*
(Also reported in 285 N.W.2d 886.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the appellant, the cause was submitted on the brief of *Gerald P. Boyle,* of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *David J. Becker,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Robert W. Hansen, Reserve Judge.

HANSEN, J.   This is an appeal from a judgment forfeiting bail posted by Arthur Dulde as surety for William Braun. The appeal is brought by his wife, Jeanette Dulde, as personal representative of his estate.

In August of 1975, William Braun was brought to court in Milwaukee county on a charge of first-degree murder. Bail was set at $200,000. On September 3, 1975, bail was reduced to $75,000 cash, sureties or prop-

erty bond. On September 9, 1975, a hearing was held before the county court on the posting of a property bond by Arthur Dulde to assure the court appearances of his son-in-law, William Braun. Assets totalling $75,000 were transferred to the First Wisconsin Trust Company to be held in escrow and in trust for Braun's appearances in accordance with a bail bond agreement signed by William Braun and Arthur Dulde.

On September 9, 1975, the bail bond agreement, signed by William Braun and Arthur Dulde, was filed in court, and defendant William Braun was released from custody. That bail bond agreement, in pertinent part, provided:

The release of the defendant under the provisions of Chapter 969 Stats. having been authorized.

I/We, the undersigned, jointly and severally acknowledge that I/we and our personal representatives are bound to pay the State of Wisconsin the sum of Seventy-five Thousand ($75,000) [Dollars].

The defendant agrees to obey and comply with the following conditions of this bond:

1. The defendant shall appear before Branch IV of the County Court of Milwaukee County, Wisconsin at 4:00 p.m., September 9, 1975, *and at such other times and places as he may be required to appear, and will submit himself to any and all orders and directions in this action that may be given or issued by any Court or Judge having jurisdiction over said action.*
. . .

4. The defendant shall obey any judgment entered in this action *by surrendering himself to serve any sentence imposed and by complying with any order or direction in connection with such judgment the Court imposing it may prescribe.*
. . .

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of the bond, then this bond shall be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith and the provisions of s. 969.13, Stats., shall apply.

It is agreed and understood that this is a continuing bond *which shall continue in full force and effect until such time as the defendant and his sureties are cleared from its obligations.* [Emphasis supplied.]

Following Braun's release under the bail bond agreement and following extended plea bargaining, two years later, on October 10, 1977, an amended information was filed, charging Braun with manslaughter and an additional charge of possession of cocaine with intent to deliver. Braun pleaded guilty to these charges, and following a presentence investigation, was sentenced on December 15, 1977 to ten years in prison on the manslaughter charge and one year on the narcotics charge, the sentences to be served consecutively. Following imposition of sentence, defendant Braun, by counsel, requested a three-week postponement or stay of sentence. Jeanette Dulde was present in court at the time the trial court granted defendant's request, and ordered that the defendant appear in court on January 3, 1978. Braun did not appear in court on January 3, 1978, and has not appeared since. (On December 23, 1977, Jeanette Dulde, by counsel, filed a motion for leave for the estate of her deceased husband, Arthur Dulde, to withdraw from the obligations of the bail bond agreement. The motion for release of the surety was denied on December 27, 1977.) On May 1, 1978, the circuit court ordered the bond posted by Arthur Dulde, as surety for William Braun, forfeited. Execution of the judgment of forfeiture was stayed pending this appeal.

The issue raised on appeal is not whether the defendant, when he failed to appear in court on January 3, 1978, failed to obey or perform a condition of the bail bond agreement executed by him and his surety, Arthur Dulde. It could not be. On its face and by its terms the bail bond agreement required Braun to: (1) appear at the times and places he was required by court order to appear; (2) submit himself to any and all orders

given by any court judge having jurisdiction over said action; (3) surrender himself to serve any sentence imposed; and (4) comply with any order or direction in connection with such judgment. When William Braun failed to appear in court on January 3, 1978 (and since), he violated all four conditions set forth, clearly and unmistakably, in the bail bond agreement.

In the situation where a bonding company sought to "escape the responsibility it assumed when it executed and filed the bail bond involved," our supreme court held:

Sec. 954.36(2), Stats., requires that a bail bond in this state bind the sureties 'for the appearance . . . to answer a criminal prosecution . . . until discharged. . . .' When a defendant covered by a bail bond fails to appear, such person may be declared to be in default on his bond by the judge before whom he was ordered to appear at either the county or circuit court level."[1]

In that case, the bonding company had argued that the condition of the bond was met when the defendant appeared for the preliminary hearing since it did not consent to extension of its responsibility to further proceedings in the case. The supreme court responded, "Its consent was not needed. The bond on its face continues beyond the preliminary 'from time to time and from day to day thereafter until discharged by law.' "[2] As clearly stated in the case before us, the bail bond agreement conformed to the statutory requirements,[3]

---

[1] *State v. Summit Fidelity & Surety Co.*, 39 Wis.2d 401, 407–08, 159 N.W.2d 59, 62–63 (1967). [Footnote omitted.]

[2] *Id.* at 407, 159 N.W.2d at 62.

[3] With the bond agreement here, as in *Summit*, following and complying with the mandate of the current statute, sec. 969.09(6), Stats., there is reason to quote, *International Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945), *cert. denied*, 325 U. S. 852, the appeals court there holding:

and included defendant's appearing at all ". . . times and places as he may be required to appear," including ". . . surrendering himself to serve any sentence imposed and by complying with any order or direction in connection with such judgment the Court imposing it may prescribe." As the statute mandates and the bond agreement provided, defendant was required under his bail bond agreement to appear in court on January 3, 1978, as he had been ordered by the court to do. When he failed to do so, the express conditions of his bail bond agreement were broken by him, and the payment of the bond was due forthwith to Milwaukee county and subject to forfeiture pursuant to sec. 969.13, Stats.

Appellant does not contend that the express terms and conditions of the bail bond agreement were not violated when William Braun failed to appear in court on January 3, 1978, as he had been so ordered to do by the court. Instead, the appellant seeks to shift the focus of this appeal to whether a trial judge in this state may grant a stay of execution or postponement following imposition of sentence. As appellant's brief states the contention, ". . . the trial court abused its discretion in releasing the defendant out on bail after sentencing in this matter." If this were the issue that controls, the question would be close. We find no statutory authority for trial judges accommodating defendants with a stay

"The rule that the language of a statute requiring a bond in a certain form must be read into any bond made pursuant to the statute is frequently applied in cases where the principal on the bond applies for and receives the contract, privilege, or benefit authorized by the statute on the condition expressed in the statute that the principal execute a bond in the terms provided by the statute. In such cases the person from whom the bond is required is conclusively presumed to have intended to execute the bond in the amount and upon the conditions demanded by the statute, the benefit of which he accepts." Quoted with approval in *Summit*, *supra* note 1, at 407, n. 6, 159 N.W.2d at 62, n. 6.

of execution following sentencing.[4] We see no basis for any claim of an inherent judicial power to grant such accommodation postponements of proceedings following imposition of sentence.[5] We do note that in the federal courts and in some states it appears to be a common practice for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before starting to serve their sentences.[6] We would have to agree that no state law prohibits the practice, and, to one court, that appeared to be the test.[7] However, at the very least, we would have to see merit in appellant's contention that the stay granted defendant William Braun from December 15, 1977 to January 3, 1978, approximately three weeks, constituted an "abuse of discretion" by the trial court, there being in this state no statutory authorization for such postsentencing stays.

[4] *See* Sec. 969.01(1) and (2), Stats., providing for and limiting bail after conviction to appeals of such convictions.

[5] *See Drinkwater v. State*, 69 Wis.2d 60, 230 N.W.2d 126 (1975); *State v. Sittig*, 75 Wis.2d 497, 249 N.W.2d 770 (1977); and *State v. Wilson*, 77 Wis.2d 15, 252 N.W.2d 64 (1977), rejecting the claim of a court's inherent power, in the absence of statutory authority, to stay execution of sentences in criminal cases except in limited circumstances.

[6] *United States v. Gonware*, 415 F.2d 82, 84 (9th Cir. 1969), the court stating: ". . . it is a common practice in the federal courts as well as state courts, for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence." Quoted in *United States v. Wray*, 389 F. Supp. 1186, 1191 (W.D. Mo. 1975).

[7] *United States v. Wray*, 389 F. Supp. at 1191–92, the court holding, as to permissibility of granting stays and continuing bail during stays after sentencing: "[N]either Missouri state law, nor federal law as applied in Missouri, prohibits the granting of a reasonable stay of execution and the release of a convicted defendant for a short period of time following sentencing on the original appearance bail bond in accordance with the terms and conditions set forth therein." [Citations omitted.]

However, we do not accept appellant's contention that the forfeiture of the bail bond depends upon the validity of a trial court order for stay or postponement. Wisconsin statutory law requires that, if a defendant has been released from custody, the preliminary hearing in a criminal prosecution on a felony charge ". . . shall be commenced within 20 days after the initial appearance of the defendant."[8] Where, as was the case here with the stay following sentencing, a defendant secured delays so that this statute could not or was not complied with, would that fact warrant such defendant from ignoring the court order to appear on an after-20-days date that he had solicited and secured? Would it mean that a bail bond agreement, executed by him and his surety, was not violated when he failed to appear on the adjourned date he had sought and secured? Quite aside from the issue of estoppel or not permitting him to profit by his own actions,[9] would he somehow be excused from making the court appearance on the date he had sought? We think not, and hold that it would neither excuse him from appearing as the court ordered, nor change the terms of the bail bond agreement insuring his appearance at the time and place the court directed.[10]

---

[8] Sec. 970.03(2), Stats.

[9] *See Spence v. State Nat. Bank,* 5 S.W.2d 754, 756 (Tex. Com. App. 1928) stating: "The principle is one of estoppel in the interest of a sound administration of the laws whereby the regulatory or even validity of an act procured by one himself cannot be raised." *See also Nix v. State,* 213 So.2d 554, 558 (Miss. 1968) stating, "[W]hat will not avail the principal cannot avail the surety." [Overruled by *Wood v. State,* 345 So.2d 616 (Miss. 1977) only insofar as it held that a bail bondsman is not entitled to an extension of time delaying final judgment when a bondsman can establish that the defendant is in lawful custody in another jurisdiction.]

[10] *See Perry v. United States,* 432 F. Supp. 645, 650 (M.D. Fla. 1977), upholding conviction for bail-jumping where a case was transferred from Pennsylvania to Florida and defendant claimed

In this state, where the statute requires that bail bond agreements shall include without limitations the requirements that the defendant "will appear . . . as ordered until discharged,"[11] and with the bail bond agreement, as it was here, drafted in compliance with the statutory mandate, the question of the validity of a particular adjournment, postponement, or stay does not operate to change the liability or the terms of the bond agreement, as executed by the principal and his surety.

In the case before us, as to the liability of sureties during a stay of sentence, whether or not such stay of sentence constitutes an "abuse of discretion," as one court well stated it:

No matter how strictly the wording of the commitment made by Resolute [the surety] is construed in its favor, that commitment was broad; the surety explicity agreed that Miller [the principal and defendant] would "abide by any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe."[12] . . .

We think the following statement particularly appropriate:

The bail bond in the case at bar contains the express and unequivocal condition that ". . . the defendant is to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obey-

Florida courts did not succeed to subject matter jurisdiction, the court holding: "But even if [this court] had not had subject matter jurisdiction of the case, petitioner could not lawfully have defied this Court's orders. . . . In the present case, even if this Court's orders to appear before it on later dates had been unlawful . . . petitioner would have had no right to take the matter into his own hands and fail to appear."

[11] Sec. 969.09(1), Stats.

[12] *United States v. Miller*, 539 F.2d 445, 448 (1976).

ing any order or direction in connection with such judgment as the court imposing it may prescribe." Such a condition imposes on the surety a liability under the bail bond which does not terminate at the time of sentencing, but continues until the defendant physically surrenders himself to commence service of his sentence.[13]

We give the identical language in the bail bond agreement here before us the same construction as to limit and duration of surety liability, and further hold that, regardless of validity or invalidity of a particular stay of postponement, the terms of the agreement control. Successful challenge to the propriety of granting a stay of execution of sentence here provides no defense to the forfeiture of the bail posted by the surety for his principal when the principal and defendant failed to appear in court or surrender himself on the court-prescribed stayed execution date. As was stated by a Missouri court, where a surety claimed continuances granted in excess of those authorized by law precluded forfeiture of bail under a bond agreement:

[T]he purpose of the bail was to insure the defendant's presence, and while the granting of a continuance in excess of the time authorized was improper, in fact, it has been described as an "unauthorized and illegal act," . . . that act had nothing whatever to do with the failure of the defendant to appear in the magistrate court "from time to time . . . as directed by the court . . . ," and that is what appellant [the surety] solemnly contracted to have done.[14]

Finally, appellant contends the trial court abused its discretion in not "reducing the amount of the forfeiture in this matter." As to forfeiting bail where the condi-

[13] *United States v. Wray*, 389 F. Supp. at 1190–91. [Citations omitted.]

[14] *State v. Canania*, 537 S.W.2d 203, 205 (Mo. Ct. App. 1976). [Citation omitted.]

tions of the bail bond agreement were broken, the applicable Wisconsin statute provides: "If the conditions of the bond are not complied with, the court having jurisdiction over the defendant in the criminal action shall enter an order declaring the bail to be forfeited."[15] We see no basis for a claim of discretion having been abused in the trial court following the mandate of this statute. The next section of the same statute does provide: "This order may be set aside upon such conditions as the court imposes if it appears that justice does not require the enforcement of the forfeiture."[16] In discussing a similar statute, an eastern court stated:

[T]he courts [tend] to apply one set of criteria where the defendant ultimately put in an appearance and another where he did not. Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance . . . On the other hand, where the defendant is not produced at all, or turns up only after a long lapse of time, the courts will ordinarily deny remission without regard to the mitigating factors asserted in connection with his nonappearance.[17]

What the New York state court explained as a trend or practice among courts of forgiving or reducing forfeitures where the defendant belatedly made his appearance is sound common sense, as well as good law. It puts the burden on the surety to search and find the absconding defendant with the hope that even an overdue appearance in court can warrant relief from the bail bond forfeiture. Unless or until such situation here develops, we can find no abuse of discretion in the order of the trial court forfeiting a bail bond based on the nonappearance of an absconding defendant who did not

---

[15] Sec. 969.13 (1), Stats.

[16] Sec. 969.13 (2), Stats.

[17] *People v. Fiannaca*, 306 N. Y. 513, 119 N.E.2d 363, 365 (1954).

put in a required court appearance, and has not shown up since.

*By the Court.*—Judgment affirmed.