STATE of Wisconsin, Plaintiff-Respondent,

v.

William D. BRAUN, Defendant-Respondent,

Jeanette DULDE, in her own person and as a personal representative for the estate of Arthur Dulde, Appellant-Petitioner.

Supreme Court

*No. 78–082–CR. Argued November 26, 1980.—*
*Decided February 2, 1981.*

(Also reported in 301 N.W.2d 180.)

78

For the petitioner there was a brief by *Gerald P. Boyle, S.C.*, and *Roland J. Steinle, III*, of Milwaukee, and oral argument by *Gerald P. Boyle*.

For the plaintiff-respondent the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

BEILFUSS, C.J. This is a review of a decision of the court of appeals which affirmed the judgment of the circuit court for Milwaukee county: MAX RASKIN, Circuit Judge.

On June 28, 1978, an order was entered by the circuit court requiring the forfeiture of $75,000 posted as bond in connection with the criminal prosecution of William D. Braun. This review concerns the validity of that order.

In August of 1975, William D. Braun was charged as a party to the crime of first-degree murder in violation of secs. 940.01 and 939.05, Stats. This charge arose out of an incident involving Braun, his wife, and a third party. Braun's wife, Kathleen Schaffer, was convicted of first-degree murder in a separate proceeding prior to the completion of the judicial proceedings against her husband.

The defendant Braun's bail was set at $200,000 with sureties on August 27, 1975. Bail was thereafter reset at $75,000. On September 9 the defendant, and his father-in-law Arthur Dulde, acting as surety, executed an appearance bond in that amount. Pursuant to authority granted to it by virtue of sec. 969.12(3), Stats., the court required the deposit of assets valued at $75,000 with an escrow agent pending the fulfillment of the conditions of the bond. Arthur Dulde and his wife, Jeanette Dulde, in a joint or individual capacity, owned all of the assets transferred to the escrow agent. A hearing was held on the day the bond was executed and Arthur Dulde testified that he understood that he had signed away assets as security for the appearance of his son-in-law and that this was done knowingly and freely. He further

indicated that the assets were being signed over with the consent of his wife.

After a plea bargain conference the State, on October 10, 1977, filed amended charges alleging the commission of manslaughter and possession of cocaine with intent to deliver in violation of secs. 940.05(1) and 161.41(1m), Stats. The defendant Braun pleaded guilty to both of these charges. The matter was continued for the purpose of conducting a presentence investigation.

On December 15, 1977, the defendant Braun appeared and was sentenced to an indeterminate term not to exceed ten years on the manslaughter conviction, and to an indeterminate term of not more than one year for conviction of the drug charge. The terms were ordered to be served consecutively. The court stayed the execution of the one-year term and placed the defendant on two years' probation to be served consecutively to the ten-year jail term.

At the close of the sentencing hearing, upon motion of defense counsel, the court temporarily stayed the execution of the sentence and ordered the defendant William Braun to report to the proper authorities on January 3, 1978 to commence his criminal sentence. William Braun never complied with that order.

As reflected in the brief of the petitioner-surety, Braun stole a check belonging to his mother-in-law. He made the check out in the amount of $3,000, forged his mother-in-law's signature and cashed the item. Law enforcement authorities believe that Braun used this money to help his wife escape from the Wisconsin Correctional Institution at Taycheedah where she was serving the term imposed upon her first-degree murder conviction. It also appears that the couple thereafter fled the country. At the time of oral argument Braun was still at large.

Between 1975 and the December 15, 1977 sentencing hearing, Arthur Dulde died. Mrs. Dulde as personal rep-

resentative for the Estate of Arthur Dulde, assumed responsibility as surety for the $75,000 bond. The parties agree Mrs. Dulde was present during the sentencing but neither requested nor objected to the stay of execution. On December 27, 1977, believing that her position as surety was insecure and having retained counsel, Mrs. Dulde (surety) appeared before the circuit court requesting to be relieved of her bond responsibility or requesting in the alternative further clarification of her bond responsibility. The motion was denied.

During the ensuing months the State and the surety filed several motions. The State moved for an order of forfeiture, and the surety filed motions requesting total or partial relief from the payment of bond. After hearing the arguments of counsel on May 1, the trial court ruled that a bondsman's responsibility continued until the convicted defendant surrenders or is surrendered to the custody of the State for incarceration. Accordingly, as noted above, the court ordered that the $75,000 bond be forfeited.

The surety appealed from this adverse determination. The court of appeals affirmed the trial court's forfeiture order. The opinion of the court of appeals is reported as *State v. Braun,* 92 Wis.2d 734, 285 N.W.2d 886 (Ct. App. 1979). Subsequently, we granted the surety's petition for review.

The issue[1] presented for our determination on this review is whether a surety may be held liable for the amount of an appearance bond when the defendant absconds after sentencing and after the execution of his sentence has been temporarily stayed by the trial court upon the request of the defendant.

---

[1] The surety raises questions regarding notice to the surety in situations when the court seeks to continue a bond and questions regarding the equitable reduction of the amount of bail pursuant to sec. 969.13(2), Stats. These issues need not be treated in light of the holding in this case.

The essence of the State's argument is that a trial court may order a bond to continue after sentencing until the defendant surrenders to commence his/her sentence, provided that the terms of the bond evince the surety's intent to assume such a responsibility. In support of this position the State relies on a series of federal cases.[2] We are urged to conclude that the bond agreement in this case evinces a clear intent to fix the risk of nonappearance of the defendant on the surety until the defendant surrenders to commence his sentence. It is pointed out that the bond provides that the defendant "shall appear . . . at such . . . times and places as he may be required to appear, and will submit himself to any and all orders and directions [of] . . . any Court or Judge having jurisdiction. . . ." The bond also required the defendant to surrender himself to serve any sentence imposed on him and to comply with any order or direction issued by the court in connection with the sentence. The State asks that, as with other contracts, we enforce the intent of the parties as expressed by the plain meaning of the terms of the bond.

It must be acknowledged that the surety's obligation on a bail bond as on any other surety contract is governed by a reasonable interpretation of the surety's promise. Restatement, *Security,* p. 549, sec. 203, Comment (c). Bail bond agreements, however, are not made in a vacuum and must be read and interpreted in light of applicable bail statutes. *Id.* In Wisconsin, ch. 969, Stats., governs the administration of bail in criminal proceedings.

---

[2] *See United States v. Miller,* 539 F.2d 445 (5th Cir. 1976); *United States v. Gonware,* 415 F.2d 82 (9th Cir 1969); *United States v. Wray,* 389 F. Supp. 1186 (W.D. Mo. 1975). *See also United States v. Martinez,* 613 F.2d 473 (3d Cir 1980); *United States v. Carr,* 608 F.2d 886 (1st Cir. 1979); *United States v. Catino,* 562 F.2d 1 (2d Cir. 1977); *Palermo v. United States,* 61 F.2d 138 (8th Cir. 1932). *But see United States v. D'Anna,* 487 F.2d 899 (6th Cir. 1973).

Sec. 969.09 (1), Stats., concerns the conditions which must be included within a bond where a defendant is admitted to bail prior to sentencing. That statute provides:

"If a defendant is admitted to bail before sentencing the conditions of the bond shall include, without limitation, the requirements that he will appear in the court having jurisdiction on a day certain and thereafter as ordered until discharged on final order of the court and that he will submit himself to the orders and process of the court."

It is clear from the statute that the discharge "on final order of the court" is the end point in time beyond which the surety is not liable. Before addressing the question of whether or not a bond by its terms can extend the obligation of the surety beyond the issuance of this final order, it is necessary to determine which order is the "final order" of the court within the meaning of sec. 969.09 (1).

We conclude that the final order referred to in sec. 969.09 (1), Stats., is the sentencing itself and is not an order staying the execution of sentence. The simple reason for this is that, upon sentencing, the essence of the judicial process is complete and there is nothing remaining for the court to do but to immediately turn over the defendant to the executive authority for incarceration. The trial court is not empowered to stay the execution of a criminal sentence except for legal cause or except as provided by statute.

In discussing the court's authority to stay the execution of a sentence "until further order of the court," it was written in *In re Webb*, 89 Wis. 354, 356, 62 N.W. 177 (1895) that:

"After the defendant had been convicted and the sentence of the law in legal and proper form had been pronounced against him, it is difficult to understand

upon what principle the court could further interfere in the premises. The right of the court, for cause, within the exercise of a reasonable discretion, to postpone sentence or suspend sentence, as it is said, seems to be clear; but we think, both upon principle and authority, its right to suspend the execution of the sentence after it has been pronounced cannot be sustained, except as incident to a review of the case upon a writ of error, or upon other well-established legal grounds. After sentence given, the matter within these limits would seem to be wholly within the hands of the executive officers of the law. The sole power is vested in the governor 'to grant reprieves, commutations, and pardons after conviction, for *all* offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper.' Const. art. V, sec. 6. And the action of the court in the premises, after it had regularly pronounced the punishment provided by law for the offense in question, is clearly obnoxious to the objection that it is an attempted exercise of power, not judicial, but vested in the executive. When the sentence was pronounced the defendant was in custody; and it became *eo instanti* his duty to pay his fine, and, for failure to do so, the term of his imprisonment at once began."

The court concluded that the stay of execution was a nullity.

This principle has been reaffirmed on various occasions since the decision in *Webb, supra. Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 484, 1 N.W.2d 899 (1942) reiterated this position:

"It is considered that this court is committed to the doctrine that courts have no inherent power to stay execution of a sentence in a criminal case in the absence of statutory authority except for the limited purpose of affording relief against the sentence itself."

Most recently the rule has been articulated in the context of discussions of the court's sentencing authority under sec. 973.15, Stats. *See Donaldson v. State,* 93 Wis.2d 306,

286 N.W.2d 817 (1980) ; *Drinkwater v. State,* 69 Wis.2d 60, 230 N.W.2d 126 (1975).[3]

Precisely what constitutes legal cause for the stay of execution of sentence has not been defined in detail in our law. Historically, it has been recognized that a stay pending appeal is appropriate, *see Reinex v. State,* 51 Wis. 152, 8 N.W. 155 (1881), and stays of execution have been allowed in other situations, *see, e.g., Weston v. State,* 28 Wis.2d 136, 135 N.W.2d 820 (1965). However, a stay of execution for the purpose of personally accommodating a criminal defendant has never been sanctioned. Such a stay is not for legal cause.

Having concluded that the sentencing proceeding is the "discharge on final order of the court" as that phrase is employed in sec. 969.09 (1), Stats., it remains to be seen whether the statute *requires* that the surety be released from any obligation upon sentencing or whether the statute allows the surety to accept responsibility for the nonappearance of the defendant after he is sentenced. For the purpose of the discussion of this question, it will be assumed that the language employed in the bond in this case extends the obligation of the surety beyond the time of the final order of the court to that time when the defendant surrenders to commence his sentence. We construe sec. 969.09 (1) to require that the bond cease upon final order of the court, and we conclude that a contract provision to the contrary is void as a matter of public policy.

The language of the statute itself suggests that the responsibility of the surety ceases upon the issuance of the court's final order. "[T]he conditions of the bond *shall* include . . . the requirements that he *will appear* . . . *until* discharged on final order of the court. . . ." Sec. 969.09 (1), Stats. (Emphasis supplied.) It is true

---

[3] *See also State v. Sittig,* 75 Wis.2d 497, 500, 249 N.W.2d 770 (1977).

that the statute does state that the sec. 969.09 terms shall be included "without limitation," but such language authorizes other terms or conditions of the bond as they may relate to presentencing matters.

The general statutory scheme under ch. 969 and ch. 973, Stats., also supports the conclusion that a bond may not be continued after sentencing. These statutes authorize a procedure whereby the convicted defendant is to be incarcerated upon sentencing and is not to remain at large. Sec. 973.15 provides that except as provided in that section "all sentences commence at noon on the day of sentence. . . ." There is no authority under ch. 973 for a delay or postponement of incarceration. Ch. 969 is in accord with this view of the penal process. Sec. 969.01(2) sets forth the right of the defendant to bail after conviction. It allows for release on bail after conviction *"prior to sentencing* or the granting of probation." (Emphasis supplied.)

When sec. 969.01(2), Stats., is read together with sec. 973.15, we are led to the conclusion that, except in cases of probation, the legislature has expressed a desire to have criminals immediately incarcerated upon sentencing and not to allow such persons to remain at large. It would be contrary to this legislative scheme to construe sec. 969.09(1) so as to allow a surety to remain as a defendant's "private jailer" after the defendant has been convicted and sentenced.

As a practical matter, the decision to deny release on bail after sentencing is a very reasonable choice of policy. Bail is a device which exists to insure society's interest in having the accused answer to a criminal prosecution without unduly restricting his liberty and without ignoring the accused's right to be presumed innocent. *See Gaertner v. State,* 35 Wis.2d 159, 164–65, 150 N.W.2d 370 (1967); *Whitty v. State,* 34 Wis.2d 278, 286, 149 N.W.2d 557 (1967). This purpose is fulfilled when the

defendant is convicted and sentenced. Upon conviction and sentence, society's interest in the defendant's incarceration is at its peak. The defendant's liberty has been denied by virtue of the due process of law. To allow the defendant to be released on bail at this point in the criminal law process would be to chance society's right to the vindication of criminal wrongdoing on the criminal's moral reluctance to "purchase" his liberty by forfeiting a sum certain of his own (or, as in this case, someone else's) money. The legislature has wisely decided not to take that chance.

We have examined the federal authorities which the State has cited to the court. It must be noted that a central aspect of these decisions is the federal court's willingness to accept and approve of a stay of execution of sentence. Quoting from *United States v. Gonware*, 415 F.2d 82 (9th Cir. 1969), the Fifth Circuit wrote in the case of *United States v. Miller, supra,* 539 F.2d at 448:

" '. . . . it is a common practice in the federal courts as well as the state courts, for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence. Even a bail bond broker would not expect the defendant to pay for an additional bond during . . . [a short, reasonable] stay of execution. Given this widespread practice, it is reasonable that the parties to this bail bond intended that the surety would remain liable during a reasonable stay of execution of the sentence.' "

The federal authorities make their own policy determinations, and they are free to allow their defendants to remain at large after conviction and sentencing. This is a practice which has been rejected by the courts and legislature of Wisconsin.

Sec. 969.09(1), Stats., mandates that a bail bond be available as a means of releasing the defendant only until

the defendant has been discharged by sentencing, *i.e.*, the final order of the court. A bond agreement which is intended to be security for the release of a defendant after sentencing is contrary to this statute and to the public policy of incarceration upon sentencing. Inasmuch as allowing the continuation of bail after sentencing could serve no purpose other than to secure the unauthorized release of a defendant, it cannot be doubted that such a bond agreement violates this policy. Since the terms of the bond agreement upon which the state bases its arguments violate public policy, they cannot be enforced. *See Roux Laboratories v. Beauty Franchises*, 60 Wis.2d 427, 210 N.W.2d 441 (1973); *Vic Hansen & Sons Inc. v. Crowley*, 57 Wis.2d 106, 203 N.W.2d 728 (1973); *Trumpf v. Shoudy*, 166 Wis. 353, 164 N.W. 454 (1917). The surety must be deemed to have fulfilled her obligation at the time when the defendant was produced for sentencing.

*By the Court.*—The decision of the court of appeals is reversed.

CALLOW, J., took no part.
COFFEY, J., took no part.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). Interpreting ch. 969 and ch. 973, Stats., as articulating a legislative interest in the immediate incarceration of the defendant after sentencing and denominating that interest as public policy, the majority holds that a bail bond agreement extending bond beyond sentencing is void as a matter of public policy and that the surety's duty to produce the defendant pursuant to a bail bond agreement expires, again as a matter of public policy, at the time of sentencing. The result is that while the convicted and sentenced defendant remains at large, a fugitive from justice, the surety recovers $75,000, a sum which she had agreed would be forfeited if the defendant

failed "to appear . . . and submit himself to any and all orders . . . issued by any Court or Judge . . ." or if the defendant failed to "obey any judgment entered in the action by surrendering himself to serve any sentence imposed."

The majority reasons as follows: (1) The trial court has neither statutory power nor inherent judicial authority to stay the execution of a criminal sentence for a brief time; (2) The trial court has no statutory authority to release the defendant on bail after sentencing, and the public policy enunciated in ch. 969 and ch. 973 is to prohibit the release of the defendant after sentencing except in cases of probation; and (3) The bail bond agreement by which the surety accepted responsibility for the defendant's appearance to serve his sentence is unenforceable as a matter of public policy "inasmuch as allowing the continuation of bail after sentencing could serve no other purpose than to secure the unauthorized release of a defendant." As a matter of public policy "the surety must be deemed to have fulfilled her obligation at the time when the defendant was produced for sentencing."

On examination of each of these three steps, I dissent. Because the conditions of the bond were not complied with, I would affirm the circuit court's order declaring the bail to be forfeited. Sec. 969.13(1), Stats.[1] I would, however, remand the matter to the circuit court to hold an evidentiary hearing and to exercise its discretion under sec. 969.13(2), Stats., to modify or set aside the order of forfeiture "if it appears that justice does not require the enforcement of the forfeiture."[2]

---

[1] Sec. 969.13(1), Stats., provides:

"969.13 **Forfeiture.** (1) If the conditions of the bond are not complied with, the court having jurisdiction over the defendant in the criminal action shall enter an order declaring the bail to be forfeited."

[2] Sec. 969.13(2), Stats., provides:

"This order [of bail forfeiture] may be set aside upon such conditions as the court imposes if it appears that justice does not require the enforcement of the forfeiture."

## I.

The majority correctly concludes that the trial court is not empowered to stay the execution of a criminal sentence except as provided by statute or except under its inherent judicial authority to stay "for legal cause" or "upon a writ of error or upon other well established legal grounds." *Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 485–486, 1 N.W.2d 899 (1942). Since no statute expressly authorizing or prohibiting a stay of sentence is applicable to this fact situation, it is necessary to consider the legal limits of the trial court's inherent judicial authority. In *Drewniak* and *In re Webb,* 89 Wis. 354, 62 N.W. 177 (1895), and in their progeny,[3] this court renounced a broad view of a trial court's inherent power to stay the execution of a sentence but recognized that such inherent judicial power exists in limited circumstances.

The boundaries of those circumstances have never been delineated, and this court has never decided whether a trial court's inherent judicial authority to grant a stay of execution permits it to allow a defendant a brief time to put his affairs in order before his sentence begins. We note that, except for *Weston v. State,* 28 Wis.2d 136, 135 N.W.2d 820 (1965), no Wisconsin case has involved the power of the trial court to grant a brief stay of execution of sentence. In *Weston* this court held that execution of sentence "was properly postponed" and that "deferring execution . . . to consolidate other matters before the court affecting the same defendant is not prohibited by the statutes . . . nor does it appear to be

---

[3] *See, e.g., State v. Stang Tank Line,* 264 Wis. 570, 572, 59 N.W.2d 880 (1953); *Drinkwater v. State,* 69 Wis.2d 60, 65–66, 230 N.W.2d 126 (1975); *State v. Sittig,* 75 Wis.2d 497, 500, 249 N.W.2d 770 (1977); *State v. Wilson,* 77 Wis.2d 15, 21, 252 N.W.2d 64 (1977).

an abuse of discretion in this case." 28 Wis.2d at 146, 147.[4]

Thus, prior to the announcement of the majority opinion in the instant case, this court had not decided whether, absent express statutory authority or prohibitio. ͺ a trial court could grant a brief accommodation stay of execution following imposition of sentence. The only indication the court had given was that the inherent judicial power to stay a sentence is limited; it had not defined the limitations. The decisions of this court relating to the trial court's inherent judicial power to stay execution of a sentence rest heavily on the analysis of the United States Supreme Court in *Ex Parte United States*, 242 U.S. 27 (1916). The federal courts which are bound by *Ex Parte United States* view themselves as having the power to grant a brief stay of execution of a sentence to accommodate the defendant. It also appears, although counsel for the parties could not enlighten the court, that trial courts in this state have, on occasion, granted defendants brief stays of execution of sentence.

On the basis of the previous Wisconsin and federal cases and Wisconsin practice, I conclude that prior to the decision in the instant case a trial court could reasonably conclude that it had inherent judicial power to grant a brief stay of execution of sentence to the defendant for legal cause including allowing the defendant to put his affairs in order. Whether the trial court abused its discretion in granting the brief stay in this case is not relevant to the surety's liability, and I will not discuss that issue.

I do not dissent from the majority's pronouncement that hereafter, unless the legislature provides otherwise, no trial court shall grant an accommodation stay of

[4] In *Drinkwater v. State*, 69 Wis.2d 60, 66, n. 1, 230 N.W.2d 126 (1975), this court said that "the inherent powers of a trial court recognized [in *Weston*] must be confined to the factual framework in which the [case] arose."

sentence. Unless there are statutory or judicial guidelines, the granting of brief stays of execution of sentence may be subject to abuse and such stays add another variable in a sentencing process which is already subject to criticism for lack of uniformity from court to court and county to county.

## II.

Unlike the majority, I conclude that the statutory scheme under ch. 969 and ch. 973, Stats., does not expressly or impliedly prohibit the release of the defendant on bail after sentencing.

The majority cites sec. 973.15, Stats., in support of its view that "the statutes authorize a procedure whereby the convicted defendant is to be incarcerated upon sentencing and is not to remain at large." The majority quotes that part of sec. 973.15, Stats., which provides that "all sentences commence at noon on the day of sentence." The remainder of sec. 973.15 provides that "the time which elapses after sentence while the convicted offender is at large on bail shall not be computed as any part of the term of imprisonment."[5] The language of the statute thus demonstrates that the legislature contemplated situations in which release on bail after conviction and after sentencing would be authorized.

Chapter 969, which governs bail procedure in criminal cases was part of the revision of the criminal code enacted by ch. 255, Laws of 1969. Various provisions of the new bail statute "are taken from the Federal Bail Reform Act of 1966." *See* Prefatory Note to the Session Law,

---

[5] Sec. 973.15(1), Stats., provides:

"All sentences to the Wisconsin state prisons shall be for one year or more. Except as otherwise provided in this section, all sentences commence at noon on the day of sentence, but time which elapses after sentence while the convicted offender is at large on bail shall not be computed as any part of the term of imprisonment."

AB 603, 1969 Sess.; Judicial Council Criminal Rules Committee, Prefatory Comment, 42 West's Wis. Stats. Annot., Ch. 967–969, Special Pamphlet 1970. The federal bail act, like ch. 969, provides for bail only while the defendant "is either awaiting sentence or has filed an appeal."[6] The federal courts have, contrary to the position taken by the majority, concluded that the federal district courts have the power to continue bail after sentencing and before appeal.

On reading ch. 969 and ch. 973, Stats., I find neither express authorization for nor express prohibition against a trial court's releasing the defendant between sentencing and appeal. More importantly, I cannot find in the statutes the "legislative desire," which the majority finds, "to have criminals immediately incarcerated upon sentencing and not to allow such persons to remain at large." In fact, the legislature has specifically permitted a convicted and sentenced person to remain at large, albeit during appeal. The statutory provisions for release on appeal are contrary to what the majority sees as the clear legislative policy to deny release on bail after sentencing.[7] I conclude that although no court is spe-

---

[6] *See* 18 USCA sec. 3148: "Release in capital cases or after conviction.

"A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. The provisions of section 3147 shall not apply to persons described in this section: *Provided,* That other rights to judicial review of conditions of release or orders of detention shall not be affected."

[7] For release on bail on appeal, *see* secs. 969.01(2) and 969.09 (2), Stats.; *State v. Whitty,* 86 Wis.2d 380, 282 N.W.2d 842 (1978).

cifically authorized by statute to release the defendant during an accommodation stay of sentence, there is no legislative fiat or legislative policy absolutely prohibiting the defendant from being released on bail after conviction and sentencing.

### III.

Even if I were to agree with the majority that the trial court in this case had no authority to stay the sentence and had no authority to release the defendant on bail after sentencing, I would not accept the majority's conclusion that the bail bond agreement is unenforceable as a matter of public policy.

Although the oft quoted rule is that a court will not enforce a contract which is illegal or contrary to public policy, there are many exceptions and limitations to the rule. *In the Matter of Steffes*, 95 Wis.2d 490, 513–514, 290 N.W.2d 697 (1980). Professor Corbin commented on the use of public policy as a basis for declaring a contract to be illegal as follows: "These two alliterative words are often used as if they had a magic quality and were self-explanatory." 6A Corbin, *Contracts* sec. 1375, p. 10 (1962). He explained that "there are many varieties and degrees of 'illegality' and these varieties and degrees must be taken into account in determining the

---

Sec. 969.01(2)(c), (d), Stats.:

"(c) In felonies, bail may be allowed upon appeal in the discretion of the trial court.

"(d) The supreme court or a justice thereof or the court of appeals or a judge thereof may allow bail after conviction."

Sec. 969.09(2), Stats.:

"(2) If the defendant is admitted to bail upon appeal, the conditions of the bond shall be that he will duly prosecute his appeal, that he will appear at such time and place as the court directs, and that if the judgment is affirmed or reversed and remanded for a new trial or further proceedings upon notice after remittitur, he will surrender to the sheriff of the county in which he was tried."

juristic effect of a transaction that involves some form of illegality." 6A Corbin, *Contracts* sec. 1534, p. 816 (1962).

This court has held that even if a contract is made in violation of an express statute it is not necessarily void. "Not all contracts made in violation of the provision of a statute are void. *Chapman v. Zakzaska,* 273 Wis. 64, 76 N.W.2d 537. In determining whether such a contract is void, this court has observed that the intent and purpose of the objectives of the legislature must be ascertained. *Posnanski v. Hood,* 46 Wis.2d 172, 174 N.W.2d 528 (1970)." *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis.2d 106, 116–117, 203 N.W.2d 728 (1973). This bond agreement is not made in violation of an express statute.

An agreement or any part of an agreement should be declared unenforceable on grounds of public policy only if the interest in enforcement is clearly outweighed by an interest against enforcement. Restatement of Contracts (Second) sec. 320 (Tent. Draft No. 12, March 1, 1977). Thus the decision as to enforceability should be reached only "after a careful balancing, in the light of all the circumstances, of the interest in the enforcement of the particular promise against the policy against the enforcement of such terms." Comment *b*, Restatement of Contracts (Second) sec. 320 (Tent. Draft No. 12, March 1, 1977).

It is therefore necessary to determine what interests and public policies are implicated in the enforcement of the bail bond agreement.

While setting forth one strand of public policy to justify its conclusion that the bond agreement should not be enforced, namely that society demands incarceration upon sentencing, the majority fails to weigh countervailing public policy considerations which favor requiring the surety's diligent performance of the bail bond agreement.

Public policy favors enforcement of the terms of the bail bond agreement. Requiring the surety to abide by his agreement with the defendant and with the state at the risk of forfeiture of the bond fosters the sound and orderly administration of criminal justice and protects society by ensuring that the surety executes his agreement to assure defendant's compliance with court orders. *United States v. Payne*, 272 F. Supp. 939, 941 (D.C. Conn. 1967). To require the surety to comply with the terms of the agreement is not unfair in light of the fact that the surety has the right and authority to terminate responsibility under the agreement at any time by arresting the defendant and delivering him to the sheriff. Sec. 969.14, Stats.; Restatement of Security, sec. 204, comments *b* and *c* on subsection (1), pp. 537, 551 (1941). Unless the surety terminates his responsibility, the surety consents to his continuing obligation. The majority fails to consider the public policy in favor of maintaining the role of the surety as the defendant's custodial keeper.[8] Yet it is the surety's performance in this role on which the orderly administration of criminal justice in part depends.

The bail bond agreement in the case at bar implicates these societal interests. The bond broadly states the defendant's and the surety's commitments: The defendant must obey any order or process of the trial court, and the surety agrees to insure that the defendant will abide by all the terms of the agreement. The defendant "shall appear . . . at such . . . times and places as he may be required to appear, and will submit himself to

[8] *Stearns Law of Suretyship* 433 (Elder's Rev. 1951); *Simpson on Suretyship* 491, 496 (1950); Spencer, *The General Laws of Suretyship* 412 (1913). "The purpose of the requirement of bail in criminal cases is to substitute for the public prison the friendly custody of a jailer of the defendant's own choice." Restatement of Security, sec. 210, comment *b* on subsection (2) (1941).

any and all orders and directions in this action as may be given or issued by any Court or Judge having jurisdiction over said action." More particularly, the defendant "shall obey *any judgment entered in this action by surrendering himself to serve any sentence imposed and by complying with any order or direction in connection with such judgment the Court imposing it may prescribe.*" (Emphasis added.) Furthermore, the agreement states that "it is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the defendant and his sureties are cleared from its obligations" and that if the defendant fails "to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith and the provisions of s. 969.13, Stats., shall apply."

The bail bond agreement conforms to sec. 969.09 (1) and sec. 969.13, Stats. Enforcement of the terms of the bail bond agreement is therefore equivalent to enforcement of sec. 969.09 (1) and sec. 969.13, Stats. Sec. 969.01, Stats., requires that certain conditions be included in a bond "without limitation," when the defendant is admitted to bail before sentencing. Sec. 969.09 (1), Stats., provides:

"Conditions of bond. (1) If a defendant is admitted to bail before sentencing the conditions of the bond shall include, without limitation, the requirements that he will appear in the court having jurisdiction on a day certain and thereafter as ordered until discharged on final order of the court and that he will submit himself to the orders and process of the court."

The bail bond agreement in this case satisfies these conditions.

Neither chapter 969, Stats., nor the bond agreement states how the defendant or the surety is "discharged" or "cleared" of obligations except under special circumstances. *See, e.g.,* sec. 969.14(3), Stats. The majority

interprets sec. 969.09(1) to mean that the defendant and surety are "discharged" or "cleared" at sentencing. However, there is no court order in this case discharging or clearing the defendant or the surety from further obligations under the bond. Nor did the circuit court at the sentencing intend to discharge the defendant on final order; the court ordered the defendant to appear again. The defendant, the state and the surety who was present in the court with counsel must have known that the circuit court did not intend that either the defendant or the surety was discharged from the obligations of the bond at the sentencing hearing.[9]

While there is no statutory definition of what "discharged" means, there is statutory authority for the view that the defendant was bound under sec. 969.09(1) and the bond to appear on January 3. Sec. 969.09(1), Stats., requires as a condition of the bond that the defendant "will submit himself to the orders and process of the court." Under the bail bond agreement the defendant

[9] After pronouncing the sentence, the circuit court advised the defendant of his appeal rights. The proceedings drew to a close, and the court announced "That will be all." Defense counsel then asked to be "heard just briefly" and requested that the circuit court stay execution of sentence to January 2 at 9:00 o'clock, saying:

"I would indicate to the Court that in view of the proceedings— in view of the sentence et cetera and the time of year I, on behalf of Mr. Braun, would indicate to the Court that he does have a seventy-five thousand dollar bail posted. It has been posted for a very substantial period of time. He never failed to appear. I ask the Court to stay the execution of sentence to January 2nd at 9:00 o'clock."

The state said nothing. The circuit court, without comment or inquiry, announced that the sentence would be stayed until January 3rd at 9:00 o'clock. The hearing then ended. While the circuit court did not state whether the bail bond was or was not continued and indeed did not refer to the bail bond, it is clear from the record and the surety's brief that counsel for both the state and defense understood the court was attempting to extend the obligations of the bond.

agrees to "obey any judgment entered in this action by surrendering himself to serve any sentence imposed and by complying with any order . . . in connection with such judgment." The circuit court order at the sentencing hearing on December 15 that the defendant appear on January 3 is clearly an order within the terms of sec. 969.09(1) and the bond agreement, and the defendant was obliged to comply with that order.

Consideration of the language of the bail bond agreement in conjunction with sec. 969.09(1) leads to the conclusion that the surety's obligation extended to the defendant's compliance with the trial court's order that he report on January 3 to begin his sentence.

The legislature has clearly set forth the policy of this state as requiring forfeiture when the conditions of the bond are not fulfilled. Forfeiture is unconditionally required by statute. Sec. 969.13(1), Stats., provides: "If the conditions of the bond are not complied with, the court having jurisdiction over the defendant in the criminal action shall enter an order declaring the bail to be forfeited."

The parties specifically contemplated forfeiture as the penalty for defendant's noncompliance. The agreement refers to sec. 969.13, Stats., and expressly provides for payment of the bond if the defendant "fails to obey or perform any of [the] conditions . . . ." Moreover in this case the surety had an opportunity to terminate the bond after sentencing and thus be released from liability thereunder. At oral argument counsel for the surety acknowledged that the surety was present at sentencing as was counsel for the Estate of Arthur Dulde. The surety could have terminated her exposure under the bail bond agreement by standing up and telling the court she wanted to be "discharged" from the obligations of the bond and that she was "surrendering" the defendant. Sec. 969.14(1), Stats.

Even if the trial court lacked the power or jurisdiction to release the defendant after sentencing or to order him to return,[10] neither the defendant nor the surety should be permitted to ignore the court's order with impunity. If the surety is able to question the legality of a court order or of the criminal proceedings after the defendant fails to obey a court order, serious interference with the administration of justice can result. *See* Restatement of Security, sec. 205 and Comments (1941).[11]

---

[10] At the time the bail bond agreement was executed and the defendant released on bail after sentencing, the power of the trial court to grant the brief stay or to release the defendant on bail after sentencing had not yet been decided definitively by this court. The validity of a contract is generally determined by the law in effect at the time of its execution. *Cf.* Comment *d*, Restatement of Contracts (Second) sec. 321, p. 70 (Tent. Draft No. 12, March 1977); Restatement of Contracts, secs. 608, 609 (1932).

[11] Courts in other jurisdictions have concluded that the validity of a trial court's order does not affect the surety's liability under the bail bond agreement. In *State v. Canania*, 537 S.W.2d 203 (Mo. Ct. App. 1976), the Missouri court of appeals sustained the order for forfeiture of the bond, concluding that the validity of the trial court's order granting a continuance had no legal significance to the issue of whether there had been a violation of the provisions of the bail bond, stating:

"[T]he purpose of the bail was to insure the defendant's presence, and while the granting of a continuance in excess of the time authorized was improper, in fact it has been described as an 'unauthorized and illegal act,' *State v. Caffey*, 438 S.W.2d 167, 171 (Mo. 1969), that act had nothing whatever to do with the failure of the defendant to appear in the magistrate court 'from time to time . . . as directed by the court . . . ,' and that is what appellant solemnly contracted to have done." 537 S.W.2d at 205.

*Cf. Perry v. United States*, 432 F. Supp. 645 (M.D. Fla. 1977), in which the defendant argued that he could not be guilty of jumping bail because he was not under a lawful order to appear. The court pointed out that it did not make any difference whether the Florida district court had jurisdiction to order the defendant's appearance:

"[E]ven if it had not had subject matter jurisdiction of the case, petitioner could not lawfully have defied this Court's orders.

Upon balancing the public policy factors in favor of and against the enforcement of the bail bond agreement, I would strike the balance in favor of holding the surety to the agreement and would affirm the trial court's order under sec. 969.13(1), Stats., declaring the bail to be forfeited. When as in the instant case both the defendant and the surety elude the justice system, the public and public policy are the victims, not the victors.[12]

. . . Several analogies demonstrate this fact. Suppose these facts: 'A' is a prisoner. 'A' believes that he was convicted without due process and is therefore being detained illegally. He decides to 'take the matter into his own hands.' He escapes from prison. Later, in a habeas corpus proceeding, the court determines that 'A' was in fact denied due process and that his conviction must be overturned. Notwithstanding the illegality of the detention from which 'A' escaped, he can be tried and convicted for escape.

"Suppose these facts: policemen attempt to arrest 'B.' 'B' believes that the policemen do not have probable cause to arrest him. Thus he resists or even assaults them. The policemen subdue him, but later a court determines that the arrest was invalid. 'B' can be tried and convicted on charges of resisting or assaulting law enforcement officers.

"Suppose these facts: law enforcement officers come to the home of 'C' and display a search warrant. 'C,' believing the search warrant to be invalid, refuses them admittance. Even if the search warrant is invalid, 'C' has no right to resist the search. See *Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S. Ct. 1788, 1792, 20 L. Ed.2d 797, 803 (1968). In the present case, even if this Court's orders to appear before it on later dates had been unlawful, just as 'A' had no right to escape from unlawful detention; just as 'B' had no right to resist an unlawful arrest; and just as 'C' had no right to resist an unlawful search; petitioner would have had no right to take the matter into his own hands and fail to appear. Therefore, the indictment returned against petitioner for bail jumping, No. 75–45–Cr–J–T was valid." 432 F. Supp. at 650.

[12] "Bargains made by public officials or by corporate officers may be in gross dereliction of their official duty, subjecting them to ouster, to a tort action, or to criminal penalty; and yet those same bargains may be enforceable by the municipality or corporation for the benefit of the protected class." 6A Corbin, *Contracts* sec. 1540, p. 837 (1962).

As I stated previously, because I conclude that there is an insufficient factual record, I would nevertheless remand the matter to the circuit court to hold an evidentiary hearing and to exercise its discretion under sec. 969.13(2), Stats., to determine whether the order of bail forfeiture may be set aside on such conditions as the court imposes if it appears that justice does not require the enforcement of the forfeiture in the instant case.[13] I therefore dissent.

I am authorized to state that Justice NATHAN S. HEFFERNAN joins in this dissenting opinion.

[13] The legislature has granted the circuit court the power to set aside the forfeiture which the court ordered pursuant to sec. 969.-13(1), Stats., if it appears that justice does not require the enforcement of the forfeiture. Sec. 969.13(2), Stats., reads as follows:

"(2) This order [of forfeiture] may be set aside upon such conditions as the court imposes if it appears that justice does not require the enforcement of the forfeiture."

The court of appeals in State v. Ascencio, 92 Wis.2d 822, 829, 830, 285 N.W.2d 910 (Ct. App. 1979), noting the similarity of sec. 969.13(2), Stats., to Rule 46(e) of the Federal Rules of Criminal Procedure, concluded that although sec. 969.13(2), Stats., does not specially provide for total or partial remittitur, as does the federal rule, the circuit court does have the power to modify, as well as to set aside, the order of forfeiture. Except for the Ascencio decision, there is little precedent in this state interpreting the trial court's authority under sec. 969.13, Stats. Federal and state courts have, however, interpreted statutes similar to sec. 969.13(2), Stats., to give the trial court wide discretion in ordering a modification of the forfeiture order and have held that an appellate court will not reverse the decision of the trial court unless the trial court abused its discretion. 3 Wright, Federal Practice & Procedure: Criminal, sec. 777, p. 294 (1969); 6 Orfield, Criminal Procedure Under the Federal Rules, sec. 46:129 (1967).